## CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY v. THIRD NATIONAL BANK OF CHICAGO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 174. Argued January 8, 1890. — Decided March 17, 1890.

A corporation in debt cannot transfer its entire property by lease, so as to prevent the application of it, at its full value, to the satisfaction of the debts of the company; and when such transfer is made under circumstances like those shown in this case, a court of equity will decree the payment of a judgment debt of the lessor by the lessee.

Where, in a court of equity, an apparent legal burden on property is challenged, the court has jurisdiction of a cross bill to enforce, by its own procedure, such burden.

The court which denies legal remedies, may enforce equitable remedies for

the same debt; and an application for the latter is not foreign to a bill for the former.

A cross-bill may be amended so as to work a change in the ground of the relief sought, when the proofs which make it necessary are furnished by the original complainant in support of allegations in his bill.

A lessee of a railroad, receiving money to be expended on the leased property, and misappropriating it by spending it on another property, cannot, by afterwards spending an equal amount of its own money on the leased property, deprive a creditor of the lessor of an equitable right growing out of the misappropriation.

A misappropriation of money by a corporation being proved, and an equitable claim against the wrongdoer being established, and it appearing that the pleadings raise no issue as to the amount of the misappropriation, and that the officers of the corporation can furnish no information on this point, it is no error to hold that it was in excess of the claim.

In 1865, by a special act of the legislature of Illinois, the Chicago and Pacific Railroad Company was organized as a body corporate, with authority to construct and operate a railroad from the city of Chicago to the Mississippi River, at a point near Savanna, both points being within the State of Illinois. In 1872 it executed a trust deed upon its property to secure $3,000,000 of bonds. On March 9, 1876, judgment was rendered against it in the United States Circuit Court for the Northern District of Illinois for the sum of $3499.73, in favor of Horace Tabor. Execution was first issued upon this judgment September 9, 1876. On May 27, 1876, suit was brought to foreclose the deed of trust. After a decree in such foreclosure, and on May 1, 1879, the property was sold on an order of sale, for $916,100, to John I. Blair and others. Subsequent to April 2, 1880, but within the year prescribed by statute, the Chicago and Pacific Railroad Company redeemed the property from the sale under the foreclosure decree, the Chicago, Milwaukee and St. Paul Railway Company having advanced the money therefor. On the 19th of February, 1880, which was after the foreclosure sale but before the redemption, the Third National Bank of Chicago brought suit in the same court against the Chicago and Pacific Railroad Company, upon notes given by the company to the bank for money loaned. On the 3d of April, 1882, judgment was rendered in that suit, in favor of the bank, for $36,165.36; and on the

15th of July, of the same year, execution was issued thereon.
On the 25th day of June, 1881, which was after the redemption from the foreclosure sale, the property of the Chicago
and Pacific Railroad Company was sold, under an execution
issued upon the Tabor judgment, to Albert Keep, to whom
the certificate of sale was executed. The property so sold
was described as follows :

"All and singular the railroad of the Chicago and Pacific
Railroad Company, as the same is now surveyed, laid out,
constructed and located in the counties of Cook, DuPage,
Kane, DeKalb, Ogle and Carroll, in the State of Illinois, including the road-bed, stations, or station-houses, depot grounds,
rails, ties, fences, bridges, viaducts and culverts, and all other
buildings and structures, as well as engine houses, machine
and other shops used in connection with said railroad."  ·

On June 4, 1882, Albert Keep, the purchaser, assigned the
certificate of sale to Alexander Mitchell, the president of the
Chicago, Milwaukee and St. Paul Railway Company. The
judgment debtor, not redeeming within the year, the bank, as
judgment creditor, on September 25, 1882, redeemed from the
execution sale by the payment to the marshal of the necessary
sum, $5304.20, and this redemption money was paid to and
received by Alexander Mitchell. The statute of Illinois, with
reference to such redemptions, provides as follows :

"SEC. 20. If such redemption is not made, any decree or
judgment creditor, his executors, administrators or assigns,
may, after the expiration of twelve months and within fifteen
months after the sale, redeem the premises in the following
manner : Such creditor, his executors, administrators or assigns,
may sue out an execution upon his judgment or decree, and
place it in the hands of the sheriff or other proper officer to
execute the same, who shall indorse upon the back thereof a
levy of the premises desired to be redeemed; and the person
desiring to make such redemption shall pay to such officer the
amount for which the premises to be redeemed were sold,
with interest thereon at the rate of eight per centum per
annum from the date of the sale, for the use of the purchaser
of such premises, his executors, administrators or assigns ;

whereupon such officer shall make and file in the office of the recorder of the county in which the premises are situated a certificate of such redemption, and shall advertise and offer the premises for sale under said execution as in other cases of sale on execution." 21 Starr and Curtiss, Ill. Stat. 1398, c. 77, § 20.

The proceedings had were in conformity with this section, and the marshal advertised the sale accordingly, on October 24, 1882. As heretofore stated, the redemption by the Chicago and Pacific Railroad Company was with money advanced by the Chicago, Milwaukee and St. Paul Railway Company. This advancement was made in pursuance of these proceedings. On April 1, 1880, which was subsequent to the commencement of the suit by the bank, resolutions were passed by the stockholders of the Chicago and Pacific Railroad Company, authorizing the leasing of its property and franchises to the Chicago, Milwaukee and St. Paul Railway Company, and also the execution of a new mortgage; and on the next day, the first-named company executed its lease to the last-named company, and the two companies executed a joint trust deed upon the same property to secure the payment of $3,000,-000 of bonds, payable in thirty years. By the lease, which was for 999 years, the lessor (which will for convenience be called the Pacific Company) not only disabled itself from performing the functions and discharging the duties of its incorporation, but also transferred all its property and franchises to the lessee (hereafter called the Milwaukee Company). The consideration of the lease was $1.00, and the performance of the covenants of the lease by the lessee. The Pacific Company was largely indebted outside of the amount secured by the trust deed; it therefore surrendered to the Milwaukee Company all the means it had of discharging its indebtedness. Among the recitals in the lease were these:

"Whereas certain other parties to whom the said party of the second part was so as aforesaid indebted have prosecuted their several demands in the Superior and Circuit Courts of Cook County, and other courts of the State of Illinois, and have procured divers judgments thereon, which now remain

unpaid and unsatisfied of record, and are a lien upon the property of the said party of the first part, and other of said demands still remain unliquidated ; and whereas the said party of the second part, at the request of the said party of the first part, now proposes to aid the party of the first part in procuring a sufficient sum of money to redeem said property from the aforesaid sale, and to protect said property from all the aforesaid valid judgment liens, and also to extend and construct the road of said party of the first part to the Mississippi River; . . . and also to pay all taxes, charges, or assessments imposed or assessed, or which may be hereafter imposed or assessed, upon the property or premises of the party of the first part."

And among the covenants of the lessee were these :

"The said party of the second part, in consideration of the said demise and lease so as aforesaid made by the said party of the first part, hereby covenants and agrees that it will take up, pay, cancel, satisfy and discharge the said three thousand bonds of one thousand dollars each at maturity thereof, and will pay, cancel and discharge each and every of the coupons or interest warrants attached to the said bonds, and each of them, as the same shall become due and payable, so as aforesaid to be made and issued to the parties of the first and second parts and will, during the continuance of this lease, at all times save the said party of the first part free and harmless therefrom, and from the mortgage so as aforesaid to be executed by the said parties of the first and second parts to the Farmers' Loan and Trust Company, on the second day of April, 1880, . . . and the said party of the second part shall and will, at its own proper cost and expense, preserve and keep the railway and premises hereby demised, and every part of the same, in thorough repair, working order and condition, and supplied with rolling-stock and equipment, so that the business of the said demised railway shall be preserved, encouraged and developed. . . . The said party of the second part hereby covenants, promises and agrees to and with said party of the first part that at the end of said term, or other sooner determination of this said lease, the said party of

the second part shall redeliver and surrender up to the party of the first part, its successors or assigns, the said demised railway and premises in as good order and condition as the same shall be delivered to the said party of the second part under this lease, and with such additions, betterments and improvements as shall have been made thereto."

The bonds were sold at ninety-seven cents, and the amount necessary to redeem from the foreclosure sale was about $1,100,000. Out of the proceeds of these bonds the Milwaukee Company not only completed the construction of the entire road authorized by the charter of the Pacific Company, from Chicago to the Mississippi River, but also constructed a bridge over the Mississippi River, so as to connect this road with its own line in Iowa.

[On[1] the 18th October, 1882, the two railroad companies filed the original bill in this suit, to enjoin the sale on execution under the statute above recited. The bank answered, and also filed a cross-bill, in which the relief prayed for was: that the judgment in favor of the Third National Bank, together with the amount paid for the redemption from the sale to Albert Keep, "may be decreed to be a valid and subsisting lien, created in favor of said Third National Bank, upon all the property of the said Chicago and Pacific Railroad Company;" and that "the court should decree that the same creates an equitable lien, and incumbrance upon the property of the said Chicago and Pacific Railroad Company;" and also "that a receiver of said property may be appointed according to the course and practice, with the usual powers of receivers in like cases; that such receiver may be let into and take possession of said Chicago and Pacific Railroad Company, with all its property, depot grounds, fixtures and appurtenances, and all the rents, issues and profits thereof; that he may have power to operate and manage the said road; that he may have power to apply the revenues and all the rents,

---

[1] For the better understanding of the points in the argument for the appellant, the reporter has added to the facts as stated by Mr. Justice Brewer, the clauses in brackets. They are substantially repeated in the opinion.

issues and profits thereof to the payment of your orator's said judgment and the amount of redemption money, interest and costs thereon, paid by it under said sale to Albert Keep;" also that the said Chicago and Pacific Railroad might be decreed to be sold with its franchises, property, fixtures and appurtenances, under the order and direction of the court, and that out of the proceeds thereof, the cross-complainant might have satisfaction of its said judgment and the amount paid by it for redemption.

To this cross-bill the original complainants and the trustees under the new mortgage were made parties. To this the plaintiff demurred and, the demurrer being overruled, answered. Proofs were taken, after which the defendant filed an amended cross-bill, asking that the prayer for general relief in the cross-bill be amended as follows : " Or that the said Chicago, Milwaukee and St. Paul Railway Company may be decreed to pay to your orator the amount paid by your orator upon the redemption of the property of the Chicago and Pacific Railroad Company from the sale made on execution issued on the judgment of Horace Tabor, with interest and costs, and the amount of said judgment recovered by your orator against the said Chicago and Pacific Railroad Company with interest and costs, by a short day to be specified in said decree."

The court in its decree, ordered " that the Chicago, Milwaukee and St. Paul Railway Company pay in to the clerk of this court, within thirty days, a sum of money sufficient to satisfy the judgment, costs and interest rendered in favor of the Third National Bank of Chicago against The Chicago and Pacific Railroad Company, including also the amount, with interest, paid by the Third National Bank of Chicago to the United States marshal for the Northern District of Illinois, to redeem from the sale to Albert Keep as aforesaid ; and it is further ordered, adjudged and decreed, that in case the Chicago, Milwaukee and St. Paul Railway Company shall fail to pay said sum of money aforesaid within said thirty days, the Third National Bank of Chicago may move the court for the appointment of a receiver, with the usual power of receivers,

to take possession of the said leased property and to operate it until the amount due to the said Third National Bank of Chicago upon its judgment as aforesaid, with costs and interest thereon, and the amount, with interest thereon so paid by the Third National Bank of Chicago to the United States marshal for the Northern District of Illinois, to redeem from said sale to Albert Keep, is paid out of the earnings of said road, and for any other proper relief."

From this decree the Chicago, Milwaukee and St. Paul Railway Company appealed.]

*Mr. E. Walker* for appellant.

I. The cross-bill is not germane to the original bill, and the court erred in permitting it to be filed, and in overruling the plaintiff's demurrer thereto.

A cross-bill is a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. It is usually brought, either to obtain a necessary discovery of facts in aid of the defence of the original bill, or to obtain full relief to all parties touching the matters of the original bill. *Young* v. *Colt*, 2 Blatchford, 373.

A cross-bill is a matter of defence, and is confined to the matters in litigation in the original suit. If it brings before the court other distinct matters and rights it is no longer entitled to be deemed a cross-bill, but is an original suit and no decree, founded upon such matters, would be made upon the hearing of the cause. *Gallatian* v. *Cunningham*, 8 Cow. 361; *Walden* v. *Bodley*, 14 Pet. 156.

It is treated as an auxiliary suit, or as a dependency upon the original suit. *Slason* v. *Wright*, 14 Vermont, 208; *Cross* v. *De Valle*, 1 Wall. 5. And can be sustained only on matters growing out of the original bill. *Thompson* v. *Shoemaker*, 68 Illinois, 256; *Lund* v. *Skanes Bank*, 96 Illinois, 181; *Gage* v. *Mayer*, 117 Illinois, 632; *Daniel* v. *Morrison*, 6 Dana, 182; *Crabtree* v. *Banks*, 1 Met. (Ky.) 482; *Slason* v. *Wright*, 14

Vermont, 208; *Rutland* v. *Paige*, 24 Vermont, 181; *Ayers* v. *Carver*, 17 How. 591; *Pindall* v. *Trevor*, 30 Arkansas, 249; *Eve* v. *Louis*, 91 Indiana, 457; *Cartwright* v. *Clark*, 4 Met. 104; *Kemp* v. *Mackrell*, 3 Atk. 812; *Cross* v. *De Valle*, 1 Wall. 5; *Rubber Co.* v. *Goodyear*, 9 Wall. 807; *The Dove*, 91 U. S. 381, 385.

No decree can be founded upon new and distinct matters introduced by a cross-bill which were not embraced in the original suit. *May* v. *Armstrong*, 3 J. J. Marsh, 260; *S. C.* 20 Am. Dec. 137; *Daniel* v. *Morrison*, 6 Dana, 186; *Gallatian* v. *Cunningham, ubi sup.; Field* v. *Schieffelin*, 7 Johns. Ch. 250; *S. C.* 11 Am. Dec. 441; *Josey* v. *Rogers*, 13 Georgia, 478; *Andrews* v. *Hobson*, 23 Alabama, 219; *Gouverneur* v. *Elmendorf*, 4 Johns. Ch. 357; *Griffith* v. *Merritt*, 19 N. Y. 529.

II. The amendment to the cross-bill filed by leave of the court after the hearing, and to support the decree, was not germane either to the original bill or the cross-bill, as originally filed, and, by the introduction of new and distinct charges and an additional and entirely new prayer for relief, introduced into the cause issues not contemplated in either the original bill or the original cross-bill, and the answers filed thereto, and the court therefore erred in permitting the amendment to be filed and in founding its decree thereon.

An amendment will not be allowed at hearing, and much less, after case is heard, which contains anything that will prejudice or surprise defendant, or that will in anywise change the issues. *Moshier* v. *Knox College*, 32 Illinois, 155; *Farwell* v. *Meyer*, 35 Illinois, 40; *Hewitt* v. *Dement*, 57 Illinois, 500, 502; *Booth* v. *Wiley*, 102 Illinois, 84, 100; *Am. Bible Society* v. *Price*, 115 Illinois, 623, 666; *The Tremolo Patent*, 23 Wall. 518, 527; *Hardin* v. *Boyd*, 113 U. S. 756; *Snead* v. *McCouil*, 12 How. 407; *Oglesby* v. *Attrill*, 14 Fed. Rep. 214; *Land Co.* v. *Elkins*, 20 Fed. Rep. 545.

If the courts below abuse their discretion in permitting amendments at hearing, their action will be reviewed. *Jefferson County* v. *Ferguson*, 13 Illinois, 33, 35; *Mason* v. *Bair*, 33 Illinois, 194; *Booth* v. *Wiley*, 102 Illinois, 84, 100; *Gordon* v. *Reynolds*, 114 Illinois, 118, 123.

III. The cross-bill, as amended, is not germane to the original bill, and the court erred in founding a decree upon it as amended.

This proposition is, of course, supported by all the authorities cited under first proposition, and by the authorities cited under first branch of second proposition.

IV. The decree is not supported by the evidence.

*Mr. Huntington W. Jackson* and *Mr. John H. Thompson* for appellees.

MR. JUSTICE BREWER, after stating the case as above, delivered the opinion of the court:

Upon the facts can the validity of the decree requiring the Milwaukee Company to pay to the bank, within a specified time, the amounts of the two judgments held by it be successfully questioned? We think not. It would perhaps be difficult to point out any separate clause in the lease by which the Milwaukee Company obligated itself to pay the judgment in favor of the bank, and yet there is force in the contention that, taken as a whole, the instrument casts this burden upon the company. A part of the subject matter of the contract was claims against the Pacific Company. One recital is of the foreclosure debt; immediately following is one of the existence of claims, some of which had been sued on and passed into judgment and become liens, others still unliquidated; followed by the recital that the purpose of this arrangement is the redemption from said foreclosure sale, and the protection of the property from all the aforesaid valid judgment liens. Narrowly, the valid judgment liens referred to may include only those already existing, mentioned in the preceding recital; or, broadly all valid judgment liens perfected on the claims named in that recital, whether already in judgment or not. If these were all the provisions, the narrow construction might be preferred; but the further and express covenants of the Milwaukee Company were to pay and discharge fully the proposed indebtedness of $3,000,000, and to return at the end of the

lease, to the lessor, the demised property. Does not this indicate that the understanding and intent were that the Milwaukee Company should discharge all judgment liens founded upon existing claims, whether such liens had already been perfected, or should be created in subsequent suit? A judgment after a lease does not of its own right defeat the lease, or deprive the lessee of his interest and possession; but it operates against the lessor, and whatever interest, great or small, is retained in the leased premises. The purpose of this stipulation was not the protection of the lessee, but of the lessor. It was not that the lessee should be able to retain and enjoy the possession during the terms of the lease; but that the property should be freed from all burdens, so that at the termination of the lease the lessor might retake and enjoy it. The scope of the contract was not the payment of the debts of the lessor, for a mere debt, never passing into judgment, casts no burden upon the interest of lessor or lessee in the property, and the removal of all burdens was apparently the intent of the contracting parties. But again, the express lien on the lessor's property amounted only to about $1,100,000; yet, by the arrangement, a new lien was created from which nearly $3,000,000 was received, all of which sum passed into the hands of the lessee. Will not equity, for the payment of the debts of the lessor, follow this surplus into the hands of the lessee? Can a corporation in debt transfer its entire property by lease, so as to prevent the application of the property, at its full value, to the satisfaction of its debts? *Central Railroad* v. *Pettus*, 113 U. S. 116, 124; *Mellen* v. *Moline Iron Works*, 131 U. S. 352, 366. We do not care to pursue an inquiry into this question at length, or consider what limitations would surround this doctrine as applied generally, preferring to notice a single matter, which is significant and decisive. The contracting parties arranged not merely for the discharge of the foreclosure lien, but for the completion of the road for which the lessor's franchise was granted. The lessee not only performed these stipulations, but with moneys arising from the sale of these bonds built, for its own benefit, a bridge across the Mississippi River, connecting this road with its line

in Iowa, and thus making a continuous line of road to Omaha. Neglecting to pay the debts of the lessor, it appropriated a large amount of the proceeds of the trust deed upon the lessor's property to its own benefit, and the improvement of its own property. Here clearly was a diversion of funds, which the creditors of the lessor might follow in equity. This is only the application of familiar doctrine. The properties of a corporation constitute a trust fund for the payment of its debts; and, when there is a misappropriation of the funds of a corporation, equity, on behalf of the creditors of such corporation, will follow the funds so diverted. The Milwaukee Company, from securities on the property of the Pacific Company, received nearly three millions of dollars; part it used for the benefit of the lessor company, and part it appropriated to its own benefit. Can it do this, and let the lessor company's debt go unpaid? Equity answers this question in the negative, and such was the ruling of the circuit judge. 26 Fed. Rep. 820.

Entertaining no doubt upon these matters, we pass to the consideration of certain questions of equity pleadings and procedure and evidence upon which the counsel for appellant largely relies. It will be remembered that after its redemption from sale under the Tabor judgment, the bank, following the provisions of the statute, advertised the property for sale on the execution issued upon its own judgment. The railroad companies filed their bill in equity in the Circuit Court to restrain such sale. The bank, besides its answer, filed a cross-bill, which, after setting out the facts, prayed that its judgment might be decreed a valid equitable lien and encumbrance upon the property of the Pacific Company; that a receiver might be appointed, with power to apply the revenues to the judgment; and that the property be sold in satisfaction thereof, and for general relief. It is objected that such cross-bill was not germane to the original bill, and was, therefore, improperly filed. The case of *Railroad Companies* v. *Chamberlain*, 6 Wall. 748, fully answers this objection. In that case a bill was filed to set aside the judgment. One of the defendants, owner of the judgment, filed a cross-bill, praying that the judgment might be decreed a valid lien, and the

property sold to satisfy it. The court dismissed both bills, the latter on the ground that the former having been dismissed on its merits, the latter could not be maintained, because the parties litigating were both citizens of the same State. This last ruling was reversed by this court, Mr. Justice Nelson, delivering the opinion, saying: "We think that the court erred in dismissing the cross-bill. It was filed for the purpose of enforcing the judgment, which was in the Circuit Court, and could be filed in no other court, and was but ancillary to and dependent upon the original suit — an appropriate proceeding for the purpose of obtaining satisfaction." In that case the original bill was to set aside a judgment — here, to restrain an execution sale under a judgment; but this difference does not affect the principle. Where in a court of equity an apparent legal burden on property is challenged, the court has jurisdiction of a cross-bill to enforce by its own procedure such burden. The court which denies legal remedies may enforce equitable remedies for the same debt; and an application for the latter is not foreign to a bill for the former.

Again, it is objected that an amendment to the cross-bill was allowed at the hearing, which changed the nature of the issues, and was therefore improper. This is the most serious question in the case. The amendment conformed the cross-bill to the proofs, and was in accord with the view of the law applicable to the facts, as indicated by the circuit judge, and as already approved by us in the fore part of this opinion; but it did work a change in the ground upon which relief was sought. The cross-bill, as originally framed, relied upon the fact that by redemption from the foreclosure sale by the mortgagor, the lien of the foreclosure decree was wholly removed, leaving the Tabor judgment as a first lien upon the property; that, by the redemption from the sale under the Tabor judgment, the bank became possessed of that lien; and that, holding that lien and its own judgment lien, it was entitled to enforce those liens in equity if not by execution at law. The misappropriation of a part of the proceeds of the $3,000,000 of bonds by the Milwaukee Company was not distinctively or separately alleged or counted on

as the basis of relief.    The amendment introduced this matter into the cross-bill; but the fact was distinctly stated in the original bill filed by the railroad companies, for it alleged " that said lessee, with the means provided by the execution of said last-named trust deed and bonds, and the proceeds of the sale thereof, by and with the consent of your orator, the Chicago and Pacific Railroad Company, has completed the construction of the entire road authorized by its charter, from the city of Chicago to the Mississippi River, and has also constructed a bridge across the Mississippi River at or near Savanna." And proof of this was given by the railroad companies in their evidence.    The fact was thus developed by the railroad companies, both by their bill and their proofs, and the amendment to the cross-bill was simply to enable the cross-complainant to avail itself of what had been alleged and proved by the original complainants. So, although thereby was presented a new and independent basis of relief, we think it must be held that there was no error in permitting the cross-complainant to avail itself of the fact thus furnished by its adversaries.

It is also objected that after this amendment, thus introducing new issues, the defendants to the cross-bill asked leave to file an answer thereto, which was denied; but the answer which was tendered contained no defence to the matter thus presented.    It averred in substance that the Milwaukee Company had expended upon the road of the Pacific Company more than the entire proceeds of the $3,000,000 of bonds, to wit, about $4,000,000; but it contained no denial of the fact that it had used, as alleged, a part of the proceeds of the bonds in the construction of the bridge across the Mississippi River; in other words, it sought to excuse its misappropriation of a part of the proceeds of those securities by the fact that it had afterwards spent a large amount of its own money in improving the property of the Pacific Company. But that did not excuse the misappropriation, or release it from liability therefor.    The misappropriation gave to the bank, at the time at which it was made, the right to pursue the misappropriated proceeds into the hands of the Milwaukee

Company. That right the Milwaukee Company could not thereafter defeat by spending money on the property of the Pacific Company; and it was unnecessary to enter into any inquiry as to the reasons for this subsequent expenditure, or as to how far the necessities of its own business on the through line from Chicago to Omaha compelled further improvements on that portion of the line east of the Mississippi River.

Still again, it is objected that there was no testimony showing how much of the proceeds of these bonds was expended in the construction of the bridge across the Mississippi River. The original bill alleged that the bridge was constructed out of the proceeds of these bonds; and it might almost be assumed that the construction of a bridge across such a great river would cost far more than the amount of the bank's claims. But further in the hearing, the president of the Pacific Company (who is also the counsel in this case) was examined as a witness, and testified as to the construction of the bridge out of the proceeds of these bonds; that the Pacific Company had parted with all its property and had no earnings or income; that it was impossible for him to give any detailed statement of the manner in which the proceeds of the $3,000,000 of bonds was expended; and that he did not know whether any of the employés of either company could furnish such statement. Inasmuch, therefore, as the original bill alleged the construction of this bridge out of the proceeds of these bonds; as the answer to the amendment to the cross-bill did not deny the fact of such misappropriation, or aver that it was less than the amount of complainant's claims; and as the principal officer of the Pacific Company was unable to tell how much was thus expended, and did not know of any one who could furnish the information, we do not think the court erred in assuming that the amount of such misappropriation was in excess of the bank's claims, and rendering a decree accordingly.

We see no error in the record and the decree is therefore

*Affirmed.*