## VANCE & KIRBY v. McNABB COAL, ETC., COMPANY.

### (*Knoxville.* November 1, 1892.)

1. CORPORATIONS, PRIVATE. *Assets of, constitute trust fund for benefit of creditors.*

The assets of a corporation constitute, as between itself and its creditors, a trust fund for the payment of its debts. These assets cannot be lawfully distributed among share-holders, or, *a fortiori*, diverted to mere volunteers, while corporate debts remain unpaid. Creditors may pursue the person wrongfully obtaining such assets, for their value, or for the assets in kind.

Cases cited and approved: 7 Wall., 410; 15 How., 527.

2. SAME. *What constitutes fraudulent conveyance of corporate assets.*

The transfer of corporate assets is fraudulent and void, as against creditors of the company, where an old corporation, being indebted, conveys all its property, upon a nominal or grossly inadequate consideration, and without making provision for its creditors, to a new company brought into existence through the agency of the officers of the old company, and for the sole purpose of such transfer. The creditors of the old company may, in such case, follow the assets in the hands of the new company, if the rights of innocent purchasers have not intervened.

Cases cited and approved: 56 N. Y., 563; 114 U. S., 594; 7 Wall., 409; 15 How., 507; 102 U. S., 161; 134 U. S., 287; 13 Fed. Rep., 516.

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

WHITE & MARTIN for Vance & Kirby.

EAKIN & DICKEY for McNabb Coal, etc., Co.

CALDWELL, J.   This bill was filed by the creditors of the McNabb Coal and Coke Company to set aside an alleged fraudulent conveyance of its property, and wind up and settle its affairs as an insolvent corporation.

The McNabb Coal and Coke Company was a foreign corporation, much indebted, owning large property, and doing business in Tennessee.   For the purpose of acquiring title to that property, and probably at the instance of the officers of that company, another corporation, known as the Consolidated Coal and Iron Company, was chartered in this State on February 22, 1887; and on the same day the McNabb Coal and Coke Company conveyed to the Consolidated Coal and Iron Company about 16,000 acres of its lands, they being the greater part and most valuable of its property, for the recited "consideration of one dollar and other valuable considerations to be paid" by the vendee.

The minutes of a certain meeting of the officers and share-holders of the selling company show those "other valuable considerations" to have been the promise of a large share of paid-up capital stock in the purchasing company, the exact contract being that the McNabb Coal and Coke Company should receive for those lands "the sum of two million five hundred thousand ($2,500,000) dollars, payable in stock of the Consolidated Coal and

Iron Company, fully paid up;" $1,000,000 of said stock to be donated to the latter company, and to remain in its treasury, and be sold as the needs or demands of the company might require in the extension of its business ' and the acquisition of other lands; $200,000 of said stock to be donated to said company "to be immediately sold for equipping said lands to do a coal business;" and, finally, that $300,000 of said stock be covered into the treasury of the purchasing company, as security until the incumbrances on said lands, amounting to about $150,000, shall be paid and canceled.

Though formally executed, this deed was not registered at once, and the McNabb Coal and Coke Company seems to have remained in possession of the property a few months after its date.

Thereafter, the McNabb Coal and Coke Company made an option contract with J. D. McNeale and E. R. Donohue, whereby it agreed to sell them the same 16,000 acres of land, as well as the balance of its property, real and personal, and also $115,000 of its bonds, then ready to be issued and put on the market; and, for all these, they were to pay the McNabb Coal and Coke Company, $60,000 in money and "a certain amount of stock in a new corporation," to which it was intended all of said realty and personalty should be transferred; and they were also to pay into the treasury of such new corporation $20,000 in cash, and settle a mortgage for $35,000 on one of the tracts of land. It was further stipulated in that contract

4—8 P

that McNeale and Donohue should give, as a *bonus* to the purchasers of the $115,000 of bonds, such an amount of the stock of the prospective corporation as they saw fit, not to exceed $230,000.

Under that option, they sold the $115,000 of bonds to C. W. Short, he agreeing to pay the above-named sums of $60,000, $20,000, and $35,000, as they had agreed to do. And, in the contract with Short, which was approved by the selling company, it was agreed that the "new corporation" contemplated should issue $1,000,000 of paid-up capital stock—$200,000 to Short, as a *bonus*, $200,000 to McNeale, $200,000 to Donohue, and $400,000 to the "McNabb Coal and Coke Company, as a part of the purchase-price."

This agreement was reduced to writing and signed on August 4, 1887.

It was never fully carried out. The "new corporation" had in view was never organized, and no deed was ever made by the McNabb Coal and Coke Company, under and in pursuance of the option contract.

About this time the Consolidated Coal and Iron Company appears upon the scene again. Manifestly, that corporation had been organized with a view of succeeding the McNabb Coal and Coke Company in its property and business, and upon the distinct agreement with certain gentlemen, who signed the charter and were in the first board of directors, that they would resign from the directory whenever the real promoters of the enterprise

should so desire. Accordingly, those gentlemen did resign on August 4, 1887, the day the option agreement was finally closed, and in their stead, at the same meeting, were elected several other directors, among them J. D. McNeale, E. R. Donohue, W. B. Burnett, and G. N. Leighton—the first two being the same persons who had obtained the option contract from the McNabb Coal and Coke Company, and the latter two being president and general manager, respectively, of that corporation. F. J. Mitchell, who was secretary of both corporations, was present at that meeting, and recorded its action.

On August 6, 1887, G. N. Leighton and another turned the whole of the property of the McNabb Coal and Coke Company over to said McNeale and Donohue for the Consolidated Coal and Iron Company; and six days later, the deed, executed on February 22, 1887, was filed for registration.

On August 19, 1887, G. N. Leighton, for the McNabb Coal and Coke Company, submitted a proposition, as follows:

"*The Consolidated Coal and Iron Company:*

"DEAR SIRS—Referring to a proposition made by the McNabb Coal and Coke Company through me, on February 22, 1887, and accepted by you, and subsequently carried out in part, I desire, on behalf of the McNabb Coal and Coke Company, to propose certain modifications. The deed for the two parts referred to in said proposition to wit, the

11,500 acres tract * * * and the 4,239 acres tract * * * has been delivered to you, and I propose that the interest of the McNabb Company in the 2,891 acres tract, known as the McNabb tract, and the interest of the McNabb Company in the Florence Coal, Coke, and Iron Company shall be transferred to you. In payment therefor, and for the two tracts as above, all the stock of the Consolidated Coal and Iron Company shall be issued to me, being $2,500,000 of said stock; of which $1,500,000 shall be by me covered back into the treasury of the Consolidated Coal and Iron Company; $200,000 shall be by me assigned and transferred to C. W. Short; $200,000 to J. D. McNeale; and $200,000 to E. R. Donohue; $400,000 of said stock shall remain in the treasury of the company for the benefit of the parties interested in the McNabb Company, in accordance with the terms agreed upon by the said McNabb Company, and the terms of a contract entered into between the McNabb Company, J. D. McNeale, and E. R. Donohue; to be issued in the future in accordance with instructions to be received from the McNabb Company. Said stock shall be paid-up stock, and the transfer of the McNabb tract shall include all improvements, steam-boat, barges, stock of goods, and property of all sorts belonging to the McNabb Company in the States of Tennessee and Alabama."

At a meeting of the directors of the Consolidated Coal and Iron Company, on September 5,

1887, "on motion of C. W. Short, seconded by J. D. McNeale, the foregoing proposition was accepted by the following vote: E. R. Donohue, aye; C. W. Short, aye; S. W. Pierce, aye; G. N. Leighton, ——; W. B. Burnett, aye; J. D. McNeale, aye."

Soon thereafter, the Consolidated Coal and Iron Company was stocked at $2,500,000, and the shares of stock were issued as provided in Leighton's last proposition, except that the $400,000 of stock belonging to the McNabb Coal and Coke Company were issued to the individuals owning stock in that company.

Short complied with his part of the option agreement, except that, instead of paying $20,000 into the treasury of a new corporation to be thereafter organized, he paid that sum into the treasury of the previously existing Consolidated Coal and Iron Company, to be by it used as a part of its working capital. He settled the mortgage for $35,000, and paid $60,000 to the McNabb Coal and Coke Company, as he had agreed to do, and that company seems to have used the same in the payment of debts.

The Consolidated Coal and Iron Company, on March 5, 1888, mortgaged all of its real estate to the Farmers' Loan and Trust Company, of New York City, to secure an issue of $300,000 of bonds.

On March 22, 1890, these complainants, on behalf of themselves and other creditors of the McNabb Coal and Coke Company, filed this attachment and injunction bill against that company and

the Consolidated Coal and Iron Company, and various officers and share-holders in said companies, for the purposes stated in the opening sentence of this opinion, and for other purposes collateral thereto.

The facts hereinbefore recited, and many other facts not necessary to be mentioned, were disclosed in great detail by the answers of the defendants and by proof introduced on the trial before the Chancery Court.

The Chancellor correctly adjudged that the Mc-Nabb Coal and Coke Company was indebted to various creditors in separate sums, aggregating $4,358.92, for which execution was awarded.

He further adjudged that the $20,000 paid to the Consolidated Coal and Iron Company by C. W. Short was an asset of the McNabb Coal and Coke Company, for which the former company should account to the creditors of the latter company; and, upon that ground, he further adjudged that the said creditors of the McNabb Coal and Coke Company recover of the Consolidated Coal and Iron Company the said sum of $4,358.92, and awarded execution.

For a time all parties acquiesced in that decree. But, after execution was issued and returned *nulla bona*, the complainants, and then the Consolidated Coal & Iron Company, sued out writs of error, and brought the cause to this Court.

It is perfectly obvious that the decree is appropriate, and rested upon sound reason, as far as it

goes. The $20,000 paid by Short to the Consolidated Coal and Iron Company was part of the consideration due from him to the McNabb Coal and Coke Company for its $115,000 of bonds purchased by him, and, as a consequence, the Consolidated Coal and Iron Company had no legal right whatever to the money. Its receipt and holding of the money, under whatever claim or pretense, was, in legal contemplation, for the use of the true owner, the McNabb Coal and Coke Company. By taking the money into its treasury, the Consolidated Coal and Iron Company became, as it were, a trustee in its own wrong for the benefit of the creditors of the McNabb Coal and Coke Company, and in that capacity it must be held responsible in a Court of Equity.

It is quite as clear that the Chancellor did not go far enough in the measure of relief granted.

By every rule of law and equity the $400,000 of capital stock issued by the Consolidated Coal and Iron Company to the share-holders of the McNabb Coal and Coke Company belonged to the latter company in its corporate capacity, as assets for the benefit of its creditors in the first instance. That stock was the only consideration actually passing from the purchasing to the selling company for its property, and could not rightfully be appropriated by share-holders, as was done, to the detriment of creditors.

The consideration of the deed of February 22, 1887, though that deed did not cover all the

property, was, as has already been seen, not less than $1,000,000 of paid-up capital stock, to be issued to the McNabb Coal and Coke Company. The option contract, made with McNeale and Donohue some five or six months later, recited that $400,000 of the capital stock in the proposed "new corporation" should be issued to the "Mc-Nabb Coal and Coke Company as part of the purchase-price;" and by the final proposition, under which the Consolidated Coal and Iron Company claim to have acquired the whole property, the $400,000 of stock provided "for the benefit of the parties interested in the McNabb Company," was to be held "in accordance with the terms agreed upon" by the parties to the option contract, which, as just seen, recited that it should go to the "McNabb Coal and Coke Company as part of the purchase-price."

Then, treating the sale and purchase of the property as in every way legitimate and binding, the $400,000 of stock was a part of the price paid, and, as such, belonged primarily to the selling company, and not to its share-holders as such. Therefore, the persons receiving and appropriating that stock were guilty of a conversion, and thereby became individually responsible to the creditors of the McNabb Coal and Coke Company, each for the value of the shares taken by him.

After stating that equity regards the property of a corporation as held in trust for the payment of its debts, the Supreme Court of the United

States, in a well-considered case, said: "Assets derived from the sale of the capital stock of the corporation, *or of its property*, become, as respects creditors, the substitutes for the things sold, and, as such, they are subject to the same liabilities and restrictions as the things sold were before the sale, and while they remained in the possession of the corporation. Even the sale of the entire capital stock of the company, and the division of the proceeds of the sale among the stockholders, will not defeat the trust nor impair the remedy of the creditors, if any debts remain unpaid, as the creditors, in that event, may pursue the consideration of the sale in the hands of the respective stockholders, and compel each one, to the extent of the fund, to contribute *pro rata* towards the payment of their debts out of the moneys so received and in their hands." *Railroad Company* v. *Howard*, 7 Wallace, 410.

To the same effect is *Carson* v. *State of Arkansas*, 15 Howard, 527; 2 Story's Eq. Jur., Sec. 1252, and other authorities there cited.

But complainants are entitled to more comprehensive relief than any yet mentioned. The deed and other contracts by which the McNabb Coal and Coke Company undertook to pass the title to all its property to the Consolidated Coal and Iron Company are fraudulent and void as against creditors of the former company.

The Consolidated Coal and Iron Company was organized by the sanction and concurrence, if not

solely at the instance, of the officers of the McNabb Coal and Coke Company, for the express and single purpose of acquiring the latter's property; and the transition was soon accomplished, mainly through the efforts of those same officers, who, in the meantime, had become directors in the other company.

Moreover, the Consolidated Coal and Iron Company did not pay, or assume to pay, any thing for all this valuable property, save the nominal consideration of one dollar. True, it bound itself to issue a small part of its stock to the McNabb Coal and Coke Company, but that, under the facts of this case, did not constitute a valid consideration, or relieve the transfer of the just imputation of fraud; for the only basis of its stock was the property received from the McNabb Coal and Coke Company. That stock had nothing else to rest upon or to give it value; from no other source did the Consolidated Coal and Iron Company receive a dollar of capital either in money or property. At best, it is but an effort to make a sale whereby the purchase-price is to be paid by a return to the seller of a small part of the property sold, and the buyer is to retain the larger part and pay nothing for it.

The president of the McNabb Coal and Coke Company says the consideration received by that company for its property was the different sums of $60,000, $35,000, and $20,000, paid by C. W. Short. But that cannot be so; first, because the deed was executed long before he paid those sums,

and upon an entirely different consideration; and, secondly, because he made those payments as the consideration for the $115,000 of bonds purchased by him. The only connection those payments had with the sale of property to the Consolidated Coal and Iron Company lies in the fact that he received of that company's stock a *bonus* of $200,000, by previous agreement with McNeale and Donohue as owners of an option, which was never made available, except as to the sale of the bonds.

The truth is, that by a series of unusual offers and agreements, one corporation, while largely indebted and without providing for its creditors, has, without a valid consideration, denuded itself of all its property, and vested the same in another corporation, conceived and brought into existence for the sole purpose of such successorship.

A transaction of that kind will not stand for a moment against creditors of the former corporation, but they may follow and subject the property in the hands of the latter corporation, the same as if no transfer had been made. Only the rights of subsequent innocent purchasers for value can intervene and prevent that result.

This is a familiar principle of law with reference to fraudulent conveyances, applicable to corporations and individuals alike:

"Corporations cannot, any more than individuals, relieve their property from the payment of debts, except by a sale and transfer in good faith, and for a full consideration." *Rorke* v. *Thomas*, 56 N.

Y., 563; *Wabash, St. Louis & Pacific Railway Co.*
v. *Ham,* 114 U. S., 594; 2 Morawetz on Private
Corporations (2d Ed.), Sec. 789.

"Equity regards the property of a corporation
as held in trust for the payment of the debts of
the corporation, and recognizes the right of cred-
itors to pursue it into whosesoever possession it
may be transferred, unless it has passed into the
hands of a *bona fide* purchaser." *Railroad Company*
v. *Howard,* 7 Wallace, 409; *Carson* v. *State of
Arkansas,* 15 Howard, 507; *Graham* v. *Railroad
Company,* 102 U. S., 161; 2 Story's Eq. Jur., Sec.
1252; Wait on Insolvent Corporations, Secs. 150
and 156; 2 Morawetz on Private Corporations,
Sec. 789; *Chicago Railway Company* v. *Chicago
Bank,* 134 U. S., 287.

In *Hibernia Insurance Company* v. *St. Louis and
New Orleans Transportation Company* the Court, as
correctly stated in the head-note, held that "equity
will not permit the stockholders in one corporation
to organize another, and transfer all the corporate
property of the former to the latter, without pay-
ing all the corporate debts;" and that, "where
such a transfer is made, the obligations of the old
corporation may be enforced against the new to
the extent of the assets received by it." 13 Fed.
Rep., 516.

In another case, where it appeared that no fraud
was intended by either party, the Court held that
"a new corporation which takes, as owner, all the
property and assets of an old corporation (which

is dissolved without providing for all its debts), must pay the debts of the old corporation, at least to the amount of the assets converted." 16 Fed. Rep., 140.

Though the transfer of its property by the McNabb Coal and Coke Company was inoperative and void as to complainants, they are not entitled to a sale under their attachment, because the proof discloses the existence of a mortgage upon the attached property prior in date to the filing of the bill, and the mortgagee is not before the Court. The validity of the mortgage is not impeached in the bill. In fact, its existence seems not to have been known to complainants until disclosed in the proof, and they did not then attack it by amendment, as they might have done upon proper ground.

Complainants may elect to ratify the transfer of its property by the McNabb Coal and Coke Company, and recover the value of the $400,000 of stock from the persons receiving it; or they may avoid the transfer altogether, and pursue the property or its proceeds in the hands of the Consolidated Coal and Iron Company, subject to any rights that may have been acquired by subsequent *bona fide* purchasers for value.

Enter decree in accordance with this opinion, and allow sixty days for defendants to pay into this Court the amount of debts adjudged, with interest and costs. If such payment should not be so made, the cause will be remanded for further appropriate proceedings.