WOODLEY PETROLEUM CO., J. F. VAN CLEVE, C. F. ELMER, E. E. DABNEY, JAMES M. FOSTER, J. L. PAGE, N. M. KRONENBERG, T. J. WOODLEY, G. B. TREW, E. L. WOODLEY, H. G. FREEDMAN, AND AARON FREEDMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 18268, 18994–19004. Promulgated April 26, 1929.

*George S. Atkinson, Esq.*, and *Luke B. Garvin, C. P. A.*, for the petitioners.

*Bruce A. Low, Esq.*, for the respondent.

256

OPINION.

MILLIKEN: The alleged errors may be grouped as follows: (1) The assessment and collection of the deficiency is barred by the statute of limitations as against the Old Farmers Co.; (2) the liability of each petitioner for such deficiency is barred by the statute of limitations; (3) that respondent had assessed against each petitioner a liability before the deficiency against the Old Farmers Co. had been determined; (4) that the assessments are not justified by section 280; (5) that respondent had assessed against each petitioner a liability before

the liability of the Old Farmers Co. for the deficiency had been determined in any court; and (6) that section 280 of the Revenue Act of 1926 is unconstitutional.

These proceedings involve a decision on important questions of first instance, but we have not been favored with a brief for or on behalf of the respondent with respect thereto. We are uninformed concerning his views with regard to the liability of both the Woodley Company and the stockholders of the Old Farmers Co. and the question of the statute of limitations.

All the proceedings set forth in the caption arise from the same transaction—the transfer of the assets of the Old Farmers Co. to the Woodley Company, and the liability of each transferee arises out of a deficiency in tax determined by respondent against the Old Farmers Co. At the time the deficiency was determined the Old Farmers Co. had been dissolved and existed only for the purpose of liquidation (sec. 30, Act 267 of 1914, Constitution and Statutes of Louisiana, 1920 Ed., vol. 1, p. 316). Subsequent to his determination of the deficiency against the Old Farmers Co., respondent determined that the Woodley Company and certain of the stockholders of the Old Farmers Co. were liable to the extent set forth in our opening statement, as transferees, for the deficiency in tax. The Old Farmers Co. filed its appeal with the Board, in which it sought to have the Board decide that the deficiency was barred by the statute of limitations and was invalid for other reasons, and also that the deficiency was excessive. Subsequent to this, the petitioners in these proceedings filed their respective petitions, alleging the errors we have heretofore set forth. The same counsel represented the Old Farmers Co., the Woodley Company, and the various petitioning stockholders of the Old Farmers Co. The proceedings of the various stockholders were consolidated for hearing and decision and were so heard. The proceedings of the Old Farmers Co. and of the Woodley Company were tried separately. All the proceedings were tried by the same counsel, before the same member of the Board, and on the same day. Although the proceeding of the Old Farmers Co. was heard separately, and although no order has been entered incorporating that proceeding into the instant proceeding, nevertheless each petitioner has adopted the allegations of the first amended petition of the Old Farmers Co. in that proceeding and respondent in his answers has adopted his answer in that proceeding. In order to ascertain what those allegations are we necessarily are compelled to examine the record in that proceeding.

In the proceeding of the Old Farmers Co. we rendered a decision (12 B. T. A. 203) which resulted in reducing the deficiency of that company from the sum of $108,059.25 to $21,427.69. We also held

that as against the Old Farmers Co. neither the assessment nor collection of the correct deficiency was barred by the statute of limitations. Under circumstances above detailed, we are of the opinion that we should take notice of that decision in so far as it bears on the instant proceedings. *Butler* v. *Eaton*, 141 U. S. 240; *National Products Co.*, 11 B. T. A. 511. We therefore hold that the deficiency there determined, to wit, $21,427.69, is the amount by which the liabilities of the various petitioners are to be redetermined. We further hold that we are bound by that decision in so far as we there held that the collection and assessment of the deficiency was not barred by the statute of limitations as against the Old Farmers Co. On the latter point we there said:

There is no merit in the plea of the statute of limitations. Petitioner filed its return for 1919 on March 10, 1920; respondent mailed the deficiency letter involved in this proceeding on February 6, 1925, and petitioner filed its petition with the Board on March 26, 1925. The five-year period within which assessment can be made, provided in section 277(a)(2) of the Revenue Act of 1924, is extended by subdivision (b) of the same section. This subdivision provides:

(b) The period within which an assessment is required to be made by subdivision (a) of this section in respect of any deficiency shall be extended (1) by 60 days if a notice of such deficiency has been mailed to the taxpayer under subdivision (a) of section 274 and no appeal has been filed with the Board of Tax Appeals, or (2) if an appeal has been filed, then by the number of days between the date of the mailing of such notice and the date of the final decision by the Board.

This proceeding falls within the above provision. See also section 277(b) of the Revenue Act of 1926. Since assessment is not barred, neither is collection barred. * * *

The above is in accord with *United States* v. *Russell*, 278 U. S. 181. We adhere to the views above expressed. This disposes of petitioners' first contention.

The second contention involves the application of section 280(b) (1) and (2); section 277(a) (3) and (b); and section 274(a), of the Revenue Act of 1926. The pertinent parts of these sections read:

SEC. 280. * * * (b) The period of limitations for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; * * *

SEC. 277. (a) Except as provided in section 278—

\* \* \* \* \* \* \*

(3) The amount of income, excess-profits, and war-profits taxes imposed by * * * the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

\* \* \* \* \* \* \*

(b) The running of the statute of limitations provided in this section or in section 278 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under subdivision (a) of section 274) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court, and for 60 days thereafter.

SEC. 274. (a) If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within 60 days after such notice is mailed (not counting Sunday as the sixtieth day), the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. Except as otherwise provided in subdivision (d) or (f) of this section or in section 279, 282, or 1001, no assessment of a deficiency in respect of the tax imposed by this title and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 60-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final. * * *

The contention of petitioners is that the term "the period" of limitation for assessment against the taxpayer refers alone to the time within which an assessment may be made under section 277(a)(3). It is to be noted that the word "period" is not used in the paragraph (a)(3). It is further to be noted that subdivision (b) of the same section provides that—"the running of the statute of limitations provided in this section or in section 278 on the making of assessments * * * shall (after the mailing of a notice under subdivision (a) of section 274) be suspended for the period during which the Commissioner is prohibited from making the assessment * * * and for sixty days thereafter." So that it is clear that the "period" referred to in section 280(b)(1) is the period during which the assessment may be made against the taxpayer and that this period is to be determined in these proceedings by the application of both paragraph (1) of subdivision (a) and subdivision (b) of section 274. Any other construction would result in the anomaly that almost every appeal to the Board would result in the expiration of the statute of limitations. We are of opinion that there is no merit in this contention.

The third contention involves the construction of section 280 (a) (1) which reads:

SEC. 280. (a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of deliquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and

additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits or war-profits tax Act. * * *

.Petitioners contend that no liability can be assessed against the transferee until the tax has been assessed against the transferor. The words used in section 280 (a) (1) are not " a liability * * * in respect of the tax * * * *assessed against* the taxpayer," but are " in respect of the tax * * * *imposed upon* the taxpayer * * * by any prior income, excessive-profits or war-profits *tax Act*." Under the precise words of section 280, respondent had the right to assess against the various petitioners " the tax imposed upon the taxpayer " the Old Farmers Co., by the Revenue Act of 1918. The fact that respondent's determination of the deficiency had not been redetermined when he assessed the various " liabilities " is therefore immaterial. The situation would not have been different if respondent had made a jeopardy assessment against Old Farmers Co., since such assessment also would have been open to redetermination. In either case the petitioning transferees could raise the question of the amount of the tax. See *Grand Rapids National Bank*, 15 B. T. A. 1166. This contention must also be denied.

The fourth contention is to the effect that since a liability under section 280 must be assessed in the same manner and subject to the same provisions and limitations as in a case of deficiency, and since none of the petitioners has filed a return for such liability, the assessments against them are invalid. This contention goes directly to the validity of the section, since there is no provision in any of the revenue acts requiring such a return, and therefore this contention will be further considered when we discuss the sixth contention. Petitioners cite *United States* v. *Haar*, 19 Fed. (2d) 399, which has been reversed, since the briefs were filed in these proceedings, in *United States* v. *Haar*, 27 Fed. (2d) 252.

The fourth, fifth, and sixth contentions all raise the question of whether section 280 is unconstitutional. It is not necessary to discuss the reasons upon which petitioners base these contentions, since we have held in *Henry Cappellini et al.*, 14 B. T. A. 1269, that where transferees have invoked the provisions of this section by appealing to the Board, they may not in such proceedings question its validity.

Having disposed adversely to petitioners all of the issues raised by their petitions, we are confronted by the fact that the respondent has assessed the whole of the tax due from the Old Farmers Co. against the Woodley Company, and that he has also assessed each stockholder before us with that proportion of the tax which the number of shares held by him in the Old Farmers Co. bears to the total number of shares outstanding at the date of the transfer from the Old Farmers Co. to the Woodley Company. The total amount

assessed against the shareholders is 213/221 of the total tax, and it is asserted that one of the petitioners, E. E. Dabney, was illegally assessed, for the reason which will be hereafter given. The total of the amounts assessed is over ten times the amount of tax which we have determined was due from the Old Farmers Co.

Under these circumstances we would be highly technical and blind to our duty were we to overlook the facts just set forth. *Butler* v. *Eaton, supra.* We can not put out of sight the following facts: That respondent can collect the tax but once; that the positions of the Woodley·Company and of the stockholders of the Old Farmers Co. are divergent; that respondent has not caught within his net all the shareholders of the old company and that one that is sought to be caught by the 60-day notice may escape, and if the stockholders alone are assessed he may lose a part of the tax. For these reasons we have considered together the proceeding by the Woodley Company and the proceeding by the stockholders.

That the Woodley Company is liable seems clear. Thus, it is said in Cook on Corporations (8th Ed.), vol. III, sec. 673, p. 2657:

It is also a principle of law that a corporation buying all the property of another corporation, and paying therefor in stock of the former corporation issued to the stockholders of the latter corporation, must either pay the obligations of the latter corporation to that exent or have the property sold to pay such obligations. This is on the principle of law that property transferred may be subjected to the debts of the vendor and the vendee corporation is personally liable if it has disposed of, misapplied, or converted the property in fraud of the rights of creditors. A creditor of the old company may sue the new company to charge the assets taken over by it with payment to that extent of the old company's debts, and may recover his pro rata share of the value thereof.

See, also, the extended note (3) to this text. In the leading case of *Hibernia Insurance Co.* v. *St. Louis & New Orleans Transportation Co.*, 13 Fed. 516, it was said:

Here was a corporation engaged in a profitable business, and owning and possessing property valued at $92,000, exclusive of its franchise. It owed debts confessedly amounting to more or less than the value of its property. It ceases to transact business. Its stockholders organized themselves into another corporation, and all the property is transferred from the old to the new. It matters not that the stockholders in the two companies may not be precisely identical. We are not prepared to say that it would make any difference if the members of the new company were none of them interested in the old. The thing which we pronounce unconscionable is an arrangement by which one corporation takes from another all its property, deprives it of the means of paying its debts, enables it to dissolve its corporate existence and place itself practically beyond the reach of creditors, and this without assuming its liability. The fact here, however, appears to be that the owners of the two corporations are substantially identical, and hence there is a still stronger case in equity. It may be that in such a case the purchasing company might be permitted to show, by way of defense, that it has paid debts against the old

corporation to an amount equal to the whole value of the property received from it, including the value of its franchise. But this is a doubtful question, which does not arise here, and we express no opinion upon it.

In the oft cited case of *Grenell* v. *Detroit Gas Company*, 112 Mich. 70; 70 N. W. 413, the court said:

If this transaction be viewed in the light that the defendants appear to desire it to be, viz. that these corporations are separate entities, and that the Detroit Gas Company purchased the property of the Michigan Gas Company, yet the bill shows that such purchase included all of the property of the vendor. It must have known, or, if not, it was its duty to understand, that nothing was reserved to pay outstanding indebtedness, if there were any. It paid nothing to its vendor for this plant, but dealt with its stockholders, paying to them, in its own capital stock, the price of its purchase; thus, in effect, closing out the corporate business, and dividing its assets among its stockholders. Under such circumstances, we think a legitimate inference is that the purchase was made subject to the application of so much of the property as might be necessary to the payment of the debts of the Michigan Gas Company, if not with the understanding that all debts should be paid by the purchaser. *Berry* v. *Railroad Co.*, 52 Kan. 774, 36 Pac. 724. Again, a corporation cannot sell all of its property, and take in payment stock in a new corporation, under an arrangement that has the effect of distributing the assets of the vendor among its stockholders, to the exclusion and prejudice of its creditors; and a company making such a purchase, in consideration of an issue of its own stock to such stockholders, takes the property subject to the rights of creditors. Such an arrangement is a diversion of the trust fund.

It is said that there is nothing to show an intention to defeat the creditors of the Michigan Gas Company, as this was not a liquidated claim at the time this transfer was made. See *Schaible* v. *Ardner*, 98 Mich. 70; 56 N. W. 1105. Under the arrangement, the promoters and stockholders of the Detroit Gas Company knew that it was getting all of the property of the Michigan Gas Company, without provision for its debts, if there were any. It was bound to know that this property was charged with such debts, and ought not to be distributed among the stockholders to the exclusion of creditors. It was a party, then, to a diversion of the trust fund, and, having in its possession such fund, holds it subject to the payment of debts. It cannot be called a bona fide purchaser of the property, as against existing creditors. See *Chicago, M. & St. P. R. Co.* v. *Third Nat. Bank of Chicago*, 134 U. S. 276, 10 Sup. Ct. 550; *Vance* v. *Coke Co.*, 92 Tenn. 47, 20 S. W. 424. Counsel cite the following cases, which seem to support this view; *National Bank of Jefferson* v. *Texas Investment Co.*, 74 Tex. 437, 12 S. W. 101; *Railroad Co.* v. *Bee*, 48 Cal. 398; *Blair* v. *Railway Co.*, 22 Fed. 36; *Mott* v. *Insurance Co.*, 16 Fed. 140; *Hibernia Ins. Co.* v. *St. Louis & N. O. Transp. Co.*, 13 Fed. 516; Thomp. Corp. §§ 6542, 6543. See also, *Schaible* v. *Ardner*, 98 Mich. 70, 56 N. W. 1105.

See, also, *Jennings, Neff & Co.* v. *Crystal Ice Co.*, 128 Tenn. 417; 47 L. R. A. (NS) 1058, and the numerous cases cited both in the opinion and in the note thereto. We make the following excerpts from the opinion in this case:

The doctrine that corporate assets are a trust fund, at least to the extent that creditors are entitled in equity to payment of their debts before any distribution of corporate property is made among stockholders, is fully established in Tennessee, and creditors have a right to follow its assets or property into the hands of anyone who is not a holder in good faith in the ordinary course of

business. *Vance* v. *McNabb Coal & Coke Co.*, 92 Tenn. 47, 20 S. W. 424; Pom. Eq. Jur. § 1046.

There is abundant authority likewise for the proposition that where one corporation, for its own stock and bonds, purchases all the assets of another, without provision for the debts of the latter, the transaction is out of the ordinary course of business, and the very circumstances of the case imply full knowledge on the part of the purchasing corporation of all facts necessary to charge the property in its hands with the debts of the selling corporation. Thomp. Corp. § 6547; 10 Cyc. 1267; *Altoona* v. *Richardson Gas & Oil Co.*, 81 Kan. 717, 26 L. R. A. (N. S.) 651, 106 Pac. 1025; *Grenell* v. *Detroit Gas Co.*, 112 Mich. 70, 70 N. W. 413.

*     *     *     *     *     *     *

It follows that when this purchasing corporation took over in exchange for its own stock and bonds the assets of the other, and permitted these securities which it had substituted for the visible, tangible property of the selling corporation to be distributed among the shareholders of the latter, without provision for the creditors of the latter, it thereby became a party, with full notice, to the diversion of a trust fund. As such the purchasing corporation holds the property so acquired impressed with the same trust with which said property was originally charged, and the purchasing corporation is liable to the creditors of the selling corporation to the extent of the value of the property thus obtained.

Creditors of the old corporation cannot be required to look alone to the stock and bonds which were substituted for the real, tangible assets of that corporation. The value of securities so substituted is more or less problematical, and creditors should not be forced to surrender their claim against available, visible assets, and transfer such claim to new securities. Their remedy cannot thus be hindered and impaired for the benefit of stockholders.

This would be true even if the securities the Atlantic Company had given in exchange for the properties of the Crystal Company had actually been held intact by the latter company until all creditors were satisfied. As a matter of fact, however, in this case these securities were distributed among the stockholders of the Crystal Company from Atlanta, and there is nothing to indicate that such distribution was not had immediately upon the conveyance of the Crystal Company being executed.

This equitable liability of a transferee will be enforced, even though the tax is assessed after the transfer is made. See *Updike* v. *United States*, 8 Fed. (2d) 913, and *United States* v. *Armstrong*, 26 Fed. (2d) 227.

To recapitulate, the Woodley Company has acquired all the assets of the Old Farmers Co. and has paid therefor with its own stock, none of which was issued to the vendor but all of it to the vendor's stockholders. Whether under the contract of sale the Woodley Company assumed the obligations of the Old Farmers Co. does not appear. To paraphrase the language used in *Grenell* v. *Detroit Gas Co.*, *supra*, we think a legitimate inference from the stipulated facts is that the purchase was made by the Woodley Company subject to the application of so much of the property as might be necessary to the payment of the obligations of the Old Farmers Co. At any rate, the assets of the Old Farmers Co. upon which respondent could have levied his distraint if no transfer had been made were trans-

ferred to the Woodley Company. The stockholders possess shares of stock in the Woodley Company, which represent an equitable interest in the same assets. Under these circumstances we are of opinion that the liability for the tax of Old Farmers Co. rests primarily upon the petitioner, the Woodley Company. This company has made a cash bond to the collector in an amount far in excess of the amount of the tax as determined by us. Since respondent can collect the tax but once, we are of opinion that he should first endeavor to collect it from the Woodley Company before he proceeds against the stockholders. We will withhold decision as to the liabilities of the stockholders and place said proceedings on our reserve calendar until we are further advised by the parties whether the tax of the Old Farmers Co. has been or can be collected from the Woodley Company.

This conclusion makes it unnecessary to consider at this time the question raised in the brief filed for the petitioning stockholders to the effect that the assessment against petitioner E. E. Dabney is void for the reason that respondent did not mail him within 60 days after the assessment was made against him the notice required by section 279(b) of the Revenue Act of 1926.

Reviewed by the Board.

> *Judgment will be entered against the petitioner, Woodley Petroleum Co., for the amount of the deficiency determined against the Old Farmers Co. under Docket No. 2824, to wit, $21,427.69, and the redetermination of the liabilities of the remaining petitioners will be held in abeyance until we are further advised by the parties whether the tax due from the Old Farmers Oil Co. has been or can be collected from the petitioner, Woodley Petroleum Co.*