Mace vs. Roberts.

97  199
d100 646

Mace, Respondent, vs. Roberts, Garnishee, Appellant.

*September 28 — October 22, 1897.*

*Fraudulent conveyances: Garnishment in aid of execution: Evidence:
Judicial notice: Appeal.*

1. In a garnishment proceeding in aid of his execution, a judgment
   creditor may attack as being fraudulent a transfer of property by
   the judgment debtor to the garnishee.
2. In such garnishment proceeding the court will take judicial notice
   of the proceeding and judgment before it in the original action,
   and therefore the plaintiff need not formally offer the record
   thereof in evidence at the trial.
3. The objection that the plaintiff failed to offer such record in evi-
   dence, in such a case, cannot be taken for the first time in the ap-
   pellate court.
4. Where, in such a case, the evidence tended to show that the debt-
   or's transfer of property to the garnishee was fraudulent, and the
   testimony of the garnishee was indefinite; and when required to
   produce his books and papers containing an account of his trans-
   actions with the debtor he failed to do so, *held*, that a finding that
   the transfer was fraudulent would be sustained.

Appeal from a judgment of the superior court of Milwau-
kee county: Frank M. Fish, Judge. *Affirmed.*

The plaintiff, *Mace,* recovered a judgment against the de-
fendant Cottrell, for $1,410.05, in the superior court of Mil-
waukee county, September 28, 1894, and an execution was
issued on the judgment, and, the usual affidavit having been
made on behalf of the plaintiff, the defendant, *Roberts,* was
summoned as garnishee. He filed within the time limited
his general answer, as provided in sec. 2759, R. S., denying
his liability. The plaintiff elected to take issue on his an-
swer, and this issue was tried before the court without a jury.
The plaintiff read in evidence the examination of the gar-
nishee, taken pursuant to sec. 4096, R. S., and called said
garnishee, who, being sworn, was examined as a witness on
said trial. The testimony extended to numerous details in

relation to somewhat extended transactions between the
garnishee and the judgment debtor, Cottrell.

It appeared from the evidence that the parties had deal-
ings together to a considerable extent, and that there was
a settlement between them in March, 1894, at which time
Cottrell, the judgment debtor, assigned and turned over to
*Roberts*, the garnishee, mortgages the face value of which
exceeded $11,000, that about that sum was actually due on
them, and a schedule or list of said mortgages was filed in
the testimony; that he claimed to have acquired them in
satisfaction of an indebtedness by said Cottrell, the judg-
ment debtor, to him, the said *Roberts*, and that *Roberts* had
been doing business for Cottrell for a considerable time; and
that at the same time he acquired from him $8,500 in stock
in the Watertown Land Company, but it does not appear to
have been of any particular value. It appeared from the
testimony of *Roberts* that he kept an account, and had checks
and other papers, from which he could ascertain the amount
of said alleged indebtedness of Cottrell to him. He testified
that there was a balance of $5,713.74 due on his books, and
that none of it had been paid in any other way except
on this settlement. Again, he testified that Cottrell owed
him $13,418.76 at the time they made the settlement; that
he had had the mortgages so assigned and turned over to
him in his possession three years, or a part of them; that
he loaned him money, and kept them as security, but did
not have any assignment; that from all the property he re-
ceived from him on this settlement he would not realize any
more than the amount Cottrell owed him, and that he would
not give over $10,000 for the entire property transferred to
him for it; that he had collected the interest for a consider-
able time on these mortgages as it became due from time
to time, and the testimony tended to show that the amount
was about $2,600 a year; and that he had realized other
sums out of the property assigned. Again, he testified that

the amount of loans he was handling for Cottrell was up-
wards of $20,000, and that he did not take any due-bill or
receipt when he loaned him money, and did not make an
entry of it in his books. He could not tell what he loaned
him by the stub books. He testified that he had not his
books of account in court, although he knew that the *bona
fides* of the assignment from Cottrell to him was the vital
point in the case; that they were in his office at Witten-
berg, Shawano county; that he had no abstract of his books
or statement of the account between Cottrell and himself
there, had only the balance, and no way of telling the items
of that account at the present time other than the stub check
books; that he always rendered a statement at the end of
each year, and sometimes one or two a year.

The testimony in regard to the indebtedness of Cottrell
to *Roberts* was exceedingly vague and indefinite, and his
answers given upon his examination were evasive and con-
tradictory. He was requested to produce the papers, docu-
ments, memoranda, and books referred to, but did not do
so. The defendant offered no testimony.

The court found: (1) The rendition of the judgment against
Cottrell as above stated, and the issuing of an execution
thereon September 28, 1894. (2) That it was in the hands of
the sheriff when the garnishee proceeding was commenced,
which was served September 29, 1894. (3) That after the
rendition and docketing of said judgment, and on or about
the 10th day of March, 1894, the said garnishee, knowing
that the said Cottrell was indebted unto said plaintiff, and
with the intent to cheat and defraud the plaintiff out of the
collection of the said judgment, obtained from the said Cot-
trell, without due and sufficient consideration therefor, con-
veyances of notes, mortgages, contracts, and corporate stock
largely exceeding in value the amount of the claimed con-
sideration paid therefor; and that the said *Roberts* claimed
to have paid for the transfer of the said property to him by

canceling certain indebtedness claimed to be due from the
said Cottrell to him, amounting to the sum of $11,000; that
the property aforesaid which he received from the said Cot-
trell exceeded in value the sum of $16,000, and the said *Rob-
erts* had collected of said mortgages, and sold from said land,
and received upon payment therefor a sum of money largely
in excess of the amount of plaintiff's claim in this action,
and had in his possession the balance of the said property
received from the said Cottrell as aforesaid, which is all the
property that the said Cottrell had in the state of Wiscon-
sin.    (4) That the said *Roberts* was acting as agent for the
said Cottrell for the loaning of his money and collection of
the principal and interest thereof, and he had not satisfac-
torily shown the payment of the said sum of $11,000, or any
other sum, or accounted for the property aforesaid that came
into his hands.    (5) That at the time of the service of the
garnishee summons herein the said *Roberts* held in his pos-
session property, money, credits, and effects of the said de-
fendant Cottrell by and under a conveyance or conveyances
void as to the creditors of the said defendant Cottrell, and
largely in excess of the amount of the plaintiff's claim in
this action; that the conveyance or conveyances and trans-
fers of the notes, mortgages, corporate stock, and contracts
made by the said defendant to the said garnishee are void
as to the creditors of the defendant, and particularly as to
the plaintiff, and that he is entitled to a judgment against
the defendant *Roberts* for $1,410.05, with interest from Jan-
uary 27, 1894, with costs.

Judgment was perfected on said findings, from which *Rob-
erts* appealed.  He alleged general exceptions to the findings
of fact, and it was contended, among other things, that said
judgment and execution had not been formally put in evi-
dence, and that the plaintiff was in no position to attack as
fraudulent the transfers of property by the defendant Cot-
trell to the garnishee.

For the appellant there was a brief by *Jones & Lewis,* and oral argument by *D. Lloyd Jones* and *P. G. Lewis.* They contended that, in order to be entitled to attack a sale by his debtor to the garnishee, the plaintiff must show that he is a creditor. *Jones v. Lake,* 2 Wis. 210; *Eaton v. White,* id. 292; *Clemens v. Clemens,* 28 id. 637; *Davy v. Kelley,* 66 id. 452; *North Hudson Mut. B. & L. Asso. v. Childs,* 86 id. 292; *McCourt v. Bond,* 64 id. 596; *Healey v. Butler,* 66 id. 9; *Norton v. Kearney,* 10 id. 443. The judgment debtor had a perfect right to pay his debt to the garnishee by a transfer of property without regard to his other creditors. *Erdall v. Atwood,* 79 Wis. 1; *Anstedt v. Bentley,* 61 id. 629; *Carter v. Rewey,* 62 id. 552; *Brickley v. Walker,* 68 id. 563; *Landauer v. Vietor,* 69 id. 434; *Stevens v. Breen,* 75 id. 595.

*W. J. Turner,* for the respondent.

PINNEY, J. 1. The point made by the appellant, the garnishee, that the respondent was in no position to attack as fraudulent the transfer of property from Cottrell to him, is not well taken. The action brought against Cottrell, and *Roberts* as garnishee, was a proceeding in aid of the execution. It was a secondary or supplemental action. By sec. 2753, R. S., such an action may be commenced " upon judgment or decree at any time after issuance in any case of an execution against property, and before the time when it is returnable," upon an affidavit as prescribed in that section; and " any number of garnishees may be embraced in the same affidavit and summons hereinafter provided for; but if a joint liability be claimed against any, it shall be stated in such affidavit, and the garnishees named as jointly liable shall be deemed jointly proceeded against." And sec. 2754, providing for the garnishee summons, shows that the action is to be entitled as one between the original plaintiff and defendant and the garnishee, and is substantially a continuance of the original action with a view to enforce the decree

Mace vs. Roberts.

or judgment. The court takes judicial notice of the proceeding and judgment before it in the original action. It was not necessary, therefore, to formally offer the execution and judgment in evidence on the trial against the garnishee, any more than it would be to put in evidence the defendant's answer in an ordinary action in order to get the benefit of any admissions it contained. The entire record was doubtless, as is usual, actually before the court and in use by the attorneys on the trial. In any view that may be taken of the matter, the objection is exceedingly technical that it was necessary to offer in evidence the record. It was, in law and doubtless in fact, before the court. Had any suggestion been made as to the necessity or propriety of offering the record and execution in evidence, they would have doubtless been offered. The objection comes too late. The defendant should have raised it in the court below at some stage of the trial. It does not appear to have been made at the trial in any form. It cannot be taken for the first time in this court on appeal. No allusion is made to it in the bill of exceptions, and the finding of the court, in this state of the record, as to the fact of the judgment and execution, cannot be overturned on a mere suggestion made for the first time on appeal. It would be trifling with legal proceedings to now give any effect to the objection.

2. The remaining questions are questions of fact, in respect to which the trial court, who saw the garnishee, who was the only witness examined, and heard him testify, had peculiar advantages for determining the credibility of his testimony which this court cannot possess. The testimony of Cottrell was not produced. The general effect of the evidence tended to show that, as against the plaintiff, the transfer in question was a dishonest and fraudulent transaction. The garnishee knew that Cottrell was indebted to the plaintiff, and he testified that Cottrell had applied to him to get money to pay him. It is uncertain, from the evidence of the garnishee,

whether the property was worth $6,000, $11,000, $16,000, or $20,000; and his evidence as to the *bona fides* of his debt against Cottrell, in satisfaction of which he claims he took the property assigned to him, is uncertain and calculated to beget a want of confidence in his statements. It appears that he got by this transaction all the property that Cottrell had in the state; and as soon as he concluded his settlement with Cottrell, which he says he had, and got the assignment, the latter left the state, and has not since returned. The defendant had the means, it appears, from books and papers in his control, to clear up any doubts that arose in relation to the *bona fides* of the transaction; and, although called on to produce them, he did not do so, but when the trial occurred he had left them, it appears, in his office at Wittenberg, some twenty miles distant. In view of the facts and circumstances as they appear from the record, we do not feel justified in reversing the finding of the trial court, and accordingly affirm the judgment appealed from.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.