Argued 30 April, decided 2 July, rehearing denied 20 August, 1907.

### WILLIAMS *v.* COMMERCIAL NATIONAL BANK.

90 Pac. 1012, 91 Pac. 443.

EVIDENCE—PRESUMPTIONS—WITHHOLDING EVIDENCE.

1. Where, in an equitable proceeding, the good faith of a party to a transaction under consideration is questioned by the complaint and evidence, and such party holds back proof exclusively within its control, or fails to produce it on demand, the law puts the interpretation upon such conduct most unfavorable to such party.

CREDITORS' SUIT—EFFECT OF EVIDENCE.

2. The evidence adduced justifies the conclusion that Wells, Fargo & Co. was the real purchaser of the stock and assets of the Commercial National Bank in 1894 and 1898.

CORPORATIONS—LIABILITY OF TRANSFEREE OF ASSETS.

3. Where a corporation transfers all its assets, with a view to going out of business, and nothing is left with which to pay its debts, the

transferee is charged with notice of the circumstances of the transaction, and takes the assets subject to an equitable lien for the unpaid debts of the transferring company, the property of a corporation being a fund subject to be first applied to the payment of debts.

CORPORATIONS—LIABILITY OF STOCKHOLDERS FOR DISTRIBUTIONS.

4. Where a stockholder receives the assets of a corporation ·upon its liquidation, leaving it without funds to pay its creditors, he can be required to refund the full amount in a suit by a creditor to follow the assets of the corporation.

CREDITORS' SUIT—CORPORATIONS—EXHAUSTION OF LEGAL REMEDIES.

5. Where creditors have reduced their claims against a corporation to judgments and have had executions returned *nulla bona,* they have exhausted their remedies at law, and may proceed in equity to follow the corporation's assets into the hands of a transferee.

CREDITORS' SUIT—CORPORATIONS—ACCRUAL OF RIGHT OF ACTION.

6. In a proceeding in the nature of a creditors' bill to reach the assets of a liquidated corporation placed beyond the reach of legal process in fraud of creditors, the statute of limitations does not begin to run until the return of execution *nulla bona* upon plaintiff's judgments against the corporation.

SAME—LIMITATION OF ACTION.

7. Where a corporation made a transfer to defendant, valid as between them and only constructively fraudulent as to creditors of the corporation, because it deprived it of means to pay its debts, the remedy of the creditors against defendant is equitable and not primary; and judgment against the corporation and execution thereon returned *nulla bona* are prerequisites to its suit against defendant, so that limitations against the suit commence to run, not from the time of the transfer, or even from the time of plaintiffs' discovery of the property, but only from the return of the execution *nulla bona.*

From Multnomah: ALFRED F. SEARS, JR., Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by George H. Williams and others against the Commercial National Bank of Portland and Wells, Fargo & Co. (in which H. C. Leonard intervenes), to collect from defendant Wells, Fargo & Co., hereafter referred to as defendant company, judgments rendered in favor of plaintiffs severally against defendant the Commercial National Bank. Decree was rendered for plaintiffs, and the defendant company appeals. In 1894 plaintiffs were stockholders in the· Commercial National Bank, and, the bank being in financial straits, the stockholders sought the defendant company to come to its aid by purchasing part of its stock, and thus lend its name to give the bank standing, and on January 1, 1894, 1,000 shares of the capital stock

of defendant bank were purchased, the certificates for which were taken in the names of officers and stockholders of defendant company, and thereafter, in March, 1894, the capital stock of the defendant bank, at the request of the new stockholders, was increased from $250,000 to $500,000, and the stock for the whole of such increase was issued in the names of various officers and stockholders of defendant company. New directors were named by them, who thereafter controlled the defendant bank, and in September, 1896, the new management procured from the comptroller of the currency an order requiring that an assessment of 50 per cent be made upon said capital stock. Eighty thousand dollars of such stock was owned by the plaintiffs and other small stockholders, and the balance by such new management; and, in default of payment of such assessments by plaintiffs, the bank directors sold their stock on May 5, 1897, to pay the assessments thereon. Soon thereafter the stockholders of defendant bank passed a resolution to liquidate the bank, fixing October 4, 1897, for such liquidation, and on that date the defendant company took over the principal part of the assets and business of the defendant bank and continued the bank business at the same place and on the same assets, but in the name of Wells-Fargo Bank, assuming to pay all defendant bank's depositors, after which defendant bank ceased to do business as such. Thereafter, on July 13, 1898, defendant company purchased from the defendant bank the remaining assets of the bank for the consideration of $250,000. In such purchase no money changed hands, but the transaction was strictly a matter of entries in the books of the two concerns, and it is claimed by the defendant company that the $250,000 was distributed to the stockholders of the defendant bank as dividends, and in December, 1899, plaintiffs each brought action against defendant bank for damages for the conversion of its stock in the sale made on May 5, 1897. Such actions were defended by the defendant company, and by it appealed to the state supreme court, and thereafter to the United States Supreme Court, which resulted in final judgments in favor of plaintiffs in the United States Supreme

Court on January 18, 1904. On March 2, 1904, mandate therefrom was filed in the circuit court and executions issued and returned *nulla bona,* and thereafter this suit was commenced September 9, 1904, in which it appears that defendant bank had no officers, clerk or agent, and but two stockholders in this state at the time of the commencement thereof, or for several years prior thereto. Wells, Fargo & Co. appeal from a decree for plaintiffs and intervenor. AFFIRMED.

For Wells, Fargo & Co. there was a brief over the name of *Snow & McCamant,* with oral arguments by *Mr. Wallace McCamant.*

For Leonard, intervenor, there was a brief over the name of *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Chester Valentine Dolph.*

For respondents there was a brief over the name of *Thomas O'Day,* with oral arguments by *Mr. George Henry Williams, in pro. per., Mr. O'Day* and *Mr. George Hannibal Durham.*

Opinion by MR. JUSTICE EAKIN.

The principal questions involved in this case are: (1) Is the defendant company liable to plaintiffs either as a stockholder for dividends received upon its stock, or by reason of having caused the liquidation of the defendant bank and having taken over its assets? (2) Is it necessary that the plaintiffs procure a lien upon the property before they have a standing in equity to sue defendant company? (3) Are plaintiffs barred by the statute of limitations? That is, is this a concurrent, equitable proceeding to which the statute applies? (4) If the statute applies, does it begin to run from the date of plaintiffs' judgments, or from the date defendant company received the property?

1. We think it sufficiently appears from the pleadings and proof that the defendant Wells, Fargo & Co. was the real purchaser of the 1,000 shares of stock in the defendant bank purchased in 1894 in the name of persons connected with defendant company, and also of the increase of the capital stock of the

defendant company in that year, viz., 2,500 shares. The evidence relating to these matters was particularly within the control of defendant company. The account books of the defendant bank were called for by plaintiffs, being in defendant company's control and most of them without the state at the time of the trial, and the defendant company did not attempt to dispute the facts disclosed by the testimony produced by plaintiffs in relation to the ownership of the stock. Defendants' principal witness stated that, after the purchase of said thousand shares of stock in defendant bank, the management of the defendant bank and of the defendant company were identical. As stated by defendant company's counsel in his testimony at the trial, the good faith of defendant company in all these matters is questioned by the complaint and proof, and in an equity proceeding questioning the integrity of the transfer the defendant company cannot ignore the allegations and proof offered by the plaintiffs, and hold back proof, oral or record, that is exclusively within its control, without leaving the inference that such proof would be unfavorable to it. It is said in *Helms* v. *Green,* 105 N. C. 251 (11 S. E. 470: 18 Am. St. Rep. 893): "The fact that it is exclusively within the power of persons so nearly related (as the defendant in this case and his father-in-law * *) to explain every suspicious circumstance, if they did act in good faith, and the neglect to do so * * is to be considered as due to inability to show that their conduct was consistent with an honest purpose; * * and where the parties to it withhold testimony that is exclusively within their power to produce, and that would remove all uncertainty, if believed, as to its character, the law puts the interpretation upon such conduct most unfavorable to the suppressing party, as it does in all cases where a party purposely or negligently fails to furnish evidence under his control and not accessible to his adversary." To the same effect are Wharton, Evidence, § 1266, *et seq.; Knight* v. *Capito,* 23 W. Va. 639; *Glenn* v. *Glenn,* 17 Iowa, 498; *Shapira* v. *Paletz,* 59 S. W. (Tenn. Ch. App.) 774; *Chattanooga R. & C. R. Co.* v. *Evans,* 66 Fed. 809 (14 C. C. A. 116); *Mace* v *Roberts,* 97 Wis. 199 (72 N. W. 866).

The defendant bank's officers were out of the state at the time of the trial of this suit. Plaintiff sought to obtain the books of the defendant bank, and called as a witness defendant company's attorney, who had also been the attorney for the defendant bank, for the purpose of establishing the facts in relation to the ownership of the stock in defendant bank, and the transfer of the assets of defendant bank to the defendant company, the purchase of the remnant of the bank's property, and payment of dividends therefrom. Defendant company refused to produce the books or to disclose anything in relation to these matters, and, even if the plaintiffs did not use due diligence to secure the bank books, yet, if the facts in relation to these matters were not as plaintiffs claimed, it was within the power of defendant company to produce the books and witnesses to show the truth; and it was to their interest to do so, and the law puts the interpretation upon such conduct most unfavorable to defendant company when it purposely or negligently fails to furnish evidence under its control and not accessible to its adversary.

2. Plaintiffs produced as witnesses men who were officers of defendant bank up to the time of its liquidation, and who were officers of defendant company's bank, as successor of defendant bank, from whose testimony and other circumstances proven the conclusion is irresistible that defendant company furnished the money for the purchase of the 1,000 shares of stock in January, 1894, and the 2,500 shares in March of that year, and dictated the policy of defendant bank, and was the real owner of such stock. At the time of the transfer the officers and stockholders of defendant bank and defendant company consisted largely of the same individuals and the case calls for a disclosure of matters exclusively within defendant company's knowledge or control relating to the transaction; and we feel justified in holding that defendant company was the real owner of the 4,000 shares of the stock of the defendant bank during all the time after the purchase until the liquidation of the defendant bank (1 Cook, Corporations, § 253; *National Foundry & Pipe Works* v. *Oconto*

*Water Co.,* D. C., 68 Fed. 1006), and had full knowledge of the defendant bank's affairs, its assets and liabilities, and its relations to plaintiffs. At the time of the liquidation of the defendant bank, which was brought about by the defendant company, said company took over the assets of the bank as owner, with the purpose to, and did, continue the same business in the same building and upon the same assets, but in its own name. It claims to have paid value for all it received from the bank, but that seemed to be true only in the sense that it paid it with the property of the bank in assuming to pay the bank's depositors from its assets. It claims to have purchased the remnant of the assets left after taking over the business in 1897, and that the bank declared a dividend to the stockholders from the price paid, but the purchase and the payment of dividends seem to have been merely a transaction of book entries. The situation, then, is that defendant company did not take the assets of defendant bank, either in what it absorbed in October, 1897, or claims to have purchased in July, 1898, in the due course of business, nor is it an innocent purchaser, but absorbed the defendant bank for the purpose of continuing the business in its own name, and so dealt with said property, charged with full notice of the liability of the' assets of the defendant bank for its debts, and took the same *cum onere.*

3. In 10 Cyc. 1265, under the heading, "Selling Out to New Corporations," it is stated: "It is not necessary to say that a corporation cannot sell or in any way alien its property, to the prejudice of its creditors, so as to hinder, delay or defraud them in the collection of other debts owing by it; and in general, whenever a conveyance is made by a corporation under such circumstances as would characterize it as a fraud upon creditors if made by an individual, it will be set aside in equity at the suit of such creditors, or other appropriate relief will be accorded them. * * Where one corporation transfers all its assets to another corporation, and thus practically ceases to exist, without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the

creditors of the selling corporation. This is a necessary extension of the doctrine that the assets of a corporation are a trust fund for its creditors. Such being the quality which equity annexes to them, when the corporation elects to go out of existence, to dispossess itself of them, and to transfer to another corporation, equity follows the trust fund into the hands of the new taker, and charges the property in the hands of such taker with the debts of the transferrer. In other words, the corporation receiving the assets is charged in equity, as a trustee in respect of such property, with the payment of the debts of the antecedent corporation. And, while the right to follow a trust fund into the hands of a third party depends upon the answer to the inquiry whether such third party took it with knowledge of the trust, the case being one where the trustee who transferred it to him had a power of disposition, yet in such a case as we are supposing, where one corporation transfers all its assets to another, not in the ordinary course of business, the very circumstances of the case imply full knowledge on the part of the transferee of all the facts necessary to charge the property in his hands with the debts of the transferrer." It is not necessary that a fraudulent intent or want of consideration be disclosed. The property is a fund that the law sets apart or charges with a lien in favor of creditors. The debtor corporation cannot dispose of it or incumber it to the prejudice of the creditors, and such a grantee with notice takes it subject to such equitable lien. The above text is supported by many cases, viz.: *National Bank* v. *Texas Invest. Co.* 74 Tex. 437 (12 S. W. 101) ; *Sanger* v. *Upton*, 91. U. S. 60 (23 L. Ed. 220) ; *Bartlett* v. *Drew*, 57 N. Y. 589; *Railroad Co.* v. *Howard*, 74 U. S. (7 Wall.) 409 (19 L. Ed. 117) ; *Kendall* v. *Stokes*, 44 U. S. (3 How.) 87 (11 L. Ed. 506) ; *Clapp* v. *Peterson*, 104 Ill. 30; *Chicago, etc., Railway Co.* v. *Chicago Bank*, 134 U. S. 76 (10 Sup. Ct. 550: 33 L. Ed. 900) ; *Vance* v. *McNabb Coal, etc., Co.* 92 Tenn. 47 (20 S. W. 424) ; *Hibernia Ins. Co.* v. *St. Louis & N. O. Transp. Co.* (C. C.), 13 Fed. 516; *Harrison* v. *Union Pac. Ry. Co.* (C. C.), 13 Fed. 524; *Brum* v. *Merchants' Mut. Ins. Co.* (C. C.), 16 Fed. 143.

In *Blair* v. *St. Louis, H. & K. R. Co.* (C. C.), 22 Fed. 38, ·Mr. Justice TREAT says: "Was not, however, the respondent's demand now judicially ascertained one of the obligations assumed? Such seems to be a fair construction of the terms of said conveyance; but, if not so, the general principle must control, viz., that a grantee of corporate assets, as in this case, takes *cum onere,* that it must, under the facts disclosed, be treated as the successor of the prior corporation charged with a trust as to assets received." This suit was instituted to establish the superiority of this equitable lien over a subsequent mortgage given by the transferee company, and it is held superior if the mortgagee took with notice of the plaintiff's claim. The authorities seem to be uniform to the effect that the assets of the corporation are subject to an equitable lien in favor of the creditors, and that such creditors may follow such assets or the proceeds thereof into whose ever hands they can trace them and subject them to such debts, except as against a *bona fide* purchaser for value. And, where a corporation transfers all its assets to another corporation with a view of going out of business, and nothing is left with which to pay its debts, such transferee is charged with notice by the very circumstances of the transaction, and takes the same *cum onere.* Such a case cannot be considered a sale in the due course of business, even though based on a valuable consideration, as it operates as a fraud against the creditors.

4. Counsel for defendant claims, and some cases cited in his brief hold, that the remedy of plaintiffs is only *pro rata* against the stockholders, but many of these cases are based upon the .remedy in the right of the corporation by a receiver or a creditor for the amount of unpaid capital stock, or upon the liability of the shareholder beyond the par value of his stock under the United States national bank statute, such as the case of *United States* v. *Knox,* 102 U. S. 422 (26 L. Ed. 216), and *Terry* v. *Tubman,* 92 U. S. 156 (23 L. Ed. 537). But none of these cases are applicable upon the right of the creditor to follow the assets of the bank as such. Where a person, whether

a stockholder or not, receives the assets of a corporation upon the liquidation of the corporation, whether insolvent or not, if it leaves the corporation without assets with which it can be made to respond to its creditors and the suit is to reach the assets as such or their value, undoubtedly such person should be required to respond to the full amount of the assets so received. In *Hatch* v. *Dana,* 101 U. S. 213 (25 L. Ed. 885), Mr. Justice STRONG, distinguishing *Pollard* v. *Bailey,* 87 U. S. (20 Wall), 520 (22 L. Ed. 376), and *Terry* v. *Tubman,* 92 U. S. 156 (23 L. Ed. 537), concludes: "We hold, therefore, that the complainant was under no obligation to make all the stockholders of the bank defendants in his bill. It was not his duty to marshal the assets of the bank, or to adjust the equities between the corporators. In all that he had no interest. The appellants may have had such an interest, and, if so, it was quite in their power to secure its protection." To the same effect are *Clapp* v. *Peterson,* 104 Ill. 30; *Bartlett* v. *Drew,* 57 N. Y. 589; *Marsh* v. *Burroughs,* 1 Woods, 463 (Fed. Cas. No. 9,112). It is clear from these authorities that, where the proceeding is in the nature of a creditors' suit to follow the assets of the insolvent corporation in the creditor's own right to have his debt satisfied out of particular property, as said in *Bartlett* v. *Drew,* 57 N. Y. 589, "it is quite immaterial that the defendant is a stockholder." It is the business of the stockholders to adjust the equities between themselves; but, if defendant company has property of the bank or its proceeds which is liable for the payment of its debts, and is taken with knowledge of that fact, then it is liable in such a suit as this.

5. Counsel for defendant insist that plaintiffs have no standing in equity without first bringing themselves in privity with the property sought to be reached by this suit by attachment or judgment lien, but we think the authorities he cites in support of his position are inapplicable here. 12 Cyc. 19, cited by him, makes the distinction thus: "There are two classes of the cases where a creditor is permitted to come into equity for relief after he has obtained a judgment at law: the one class where

his judgment or execution has given him a lien; * * the other class where he comes into equity to obtain satisfaction of his debt out of property of the debtor which cannot be reached at law. In the latter case, * * the relief depends upon the creditor having exhausted his remedies at law." The authorities cited by defendant come with the first class above, and the case at bar in the second. Our own court also recognizes this distinction. In *Dawson* v. *Coffey,* 12 Or. 513, 519 (8 Pac. 838), Mr. Justice WALDO says: "But, if you wish to reach equitable assets, or other things not subject to execution at law, you must show that you have exhausted your remedies at law." In *Fleischner* v. *Bank of McMinnville,* 36 Or. 553, 562 (60 Pac. 603), Mr. Justice BEAN cites this case with approval in support of the statement: "It is settled that before a creditor can maintain a bill to set aside the fraudulent conveyances of his debtor he must either establish his claim by judgment, or acquire a lien by attachment." See, also, *Multnomah Street Ry. Co.* v. *Harris,* 13 Or. 198 (9 Pac. 402) ; *Sabin* v. *Anderson,* 31 Or. 487 (49 Pac. 870) ; *Wyatt* v. *Wyatt,* 31 Or. 531 (49 Pac. 855). Therefore plaintiffs have done all the law requires of them, and all that they could do by reducing their claims to judgments and having executions returned *nulla bona.*

6. Defendant invokes the statute of limitations of six years (B. & C. Comp. § 6), claiming that it commences to run from the date defendant company obtained the property of the defendant bank. Plaintiffs rely upon two answers to this plea of the statute: (1) That this is a pure equity, and therefore the statute does not apply; (2) that, if the statute does apply, it 'does not begin to run until they have a cause of suit against the defendant, viz., obtain judgment and return of execution *nulla bona.* The particular purpose of this suit or the relief sought is not such as might be the subject of an action at law, but since the property of the corporation is a primary fund, from which creditors are to be paid, and which plaintiffs seek to reach, and has been placed beyond the reach of legal process, whether by fraudulent or fair dealing, is immaterial, it is in effect a fraud

against creditors: *Powell* v. *Oregonian Ry. Co.* (C. C.), 38 Fed. 187. But defendant company claims that the statute runs in its favor upon its liability to defendant bank from the date that it received the assets, and that the plaintiffs are seeking to be subrogated to the rights of the defendant bank, and, the remedy being concurrent, plaintiffs are also barred, as held in *Hawkins* v. *Donnerberg,* 40 Or. 97 (66 Pac. 691, 908). But plaintiffs are not seeking to be subrogated to the rights of the corporation. The corporation by a corporate act went into liquidation and turned over its assets to defendant company and wound up its affairs, and has no officers or directors within the state, and has practically ceased to exist: *Walser* v. *Seligman* (C. C.), 13 Fed. 417; *Harrison* v. *Union Pac. Ry. Co.* (C. C.), 13 Fed. 525. Every director must be a stockholder and reside in the district; and when he becomes disqualified, he thereby vacates his place: Rev. Stat. U. S. § 5146 (5 Fed. Stat. Ann. 104: U. S. Comp. St. 1901, p. 3463). In *Graham* v. *Railroad Co.* 102 U. S. 148, 161 (26 L. Ed. 106), it is held: "When a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund." As between themselves, the bank has no claim upon defendant company. It owes the bank nothing, nor did it commit any wrong against the bank, and this suit is not upon the theory of subrogation, and we conclude that plaintiffs' remedy here is not concurrent with the remedy at law in favor of defendant bank.

However, the defendant company's liability is upon a constructive trust to which the statute of limitations will apply in an equity proceeding. And, although the statute of limitations will run against the constructive trust, it commences to run only from the time the cause of action arises; that is, when the party might bring a suit: Story, Equity Jurisprudence, § 1521*a*. The plaintiffs' cause of suit did not arise until judgment was obtained against the corporation and its insolvency disclosed. This is the holding of *Powell* v. *Oregonian Ry. Co.* 38 Fed. 187, and *Cherry* v. *Lamar,* 58 Ga. 541. Defendant cites a great many authorities upon the proposition that the statute of limitations has

run in defendant company's favor as to its liability for taking over the property of the bank, or receiving dividends upon its stock in the bank; but these cases are based upon the theory that plaintiffs are seeking to recover dividends wrongfully paid to stockholders, or for relief in the right of the corporation to recover from a stockholder upon his subscription to the stock, or upon his statutory liability. This proceeding is in the nature of a creditors' bill to reach the assets of an insolvent, fraudulently placed beyond the reach of. legal process: *Railroad Co.* v. *Howard,* 74 U. S. (7 Wall.) 409 (19 L. Ed. 117); *Vance* v. *McNabb Coal, etc., Co.* 92 Tenn. 47 (20 S. W. 424). The transaction operates as a fraud upon creditors. Where a corporation transfers all its assets to a new corporation without paying or making provision for the payment of its debts, as we have already seen, the new company is, by virtue of the transaction, charged with notice, and, if creditors are delayed or defrauded thereby, it is a constructive fraud against them, and the creditor, after exhausting his remedy at law, may bring a creditors' suit to reach such assets. In such case the creditor has no standing to bring a creditors' suit until he has either a lien by judgment or attachment, or has exhausted his legal remedy; and it is held that the statute of limitations does not begin to run until plaintiff's cause of suit has arisen. It is so held in *Rose* v. *Dunklee,* 12 Colo. App. 403 (56 Pac. 347): "Statutes of limitations can never become operative, as we understand the law, until there is a cause of action to which they may be applied." Also Angell on Limitations, § 42, states: "The time limited * * * is to be computed from the time at which a writ of entry accrues, and from the time at which a creditor is authorized first to commence a suit." In *Rose* v. *Dunklee,* 12 Colo. App. 403 (56 Pac. 347), it is held that fraud can be discovered only by the judgment and return of execution *nulla bona,* which discloses that the creditor is insolvent, viz., that there is no property from which the creditor can collect his debt. To the same effect is *Fogg* v. *St. Louis, H. & K. R. Co.* (C. C.), 17 Fed. 871, which is a parallel case.

In *Blackwell* v. *Hatch,* 13 Okl. 169 (73 Pac. 933), the stat-
ute provides that the limitation shall not begin to run until the
discovery of the fraud, but it is held that, notwithstanding the
discovery of the fraud before the return of execution, it does
not start the statute running unless under the conditions then
existing a creditor's cause of action accrues, and that the cause
accrues on the return of the writ *nulla bona.  Taylor* v. *Bowker,*
111 U. S. 110 (4 Sup. Ct. 397: 28 L. Ed. 368), in construing
the Maine statute, which is similar to our own, holds that the
statute begins to run from the return of the execution. To the
same effect are the Maine cases: *Corey* v. *Greene,* 51 Me. 114;
*Howe* v. *Whitney,* 66 Me. 17. The same is held in California in
a suit to set aside an assignment for the benefit of the creditors
as fraudulent: *Watkins* v. *Wilhoit* (Cal. Sup.), 35 Pac. 646;
also, *Martel* v. *Somers,* 26 Tex. 551; *Gates* v. *Andrews,* 37 N. Y.
657 (97 Am. Dec. 764) ; *Washington* v. *Norwood,* 128 Ala. 383
(30 South. 405) ; *Taylor* v. *Bowker,* 111 U. S. 110 (4 Sup. Ct.
397: 28 L. Ed. 368) ; *Rounds* v. *Green,* 29 Minn. 139 (12 N. W.
454) ; *Rogers* v. *Brown,* 61 Mo. 187. Some of these cases are
based on statutes providing that the limitation shall run from
the discovery of the fraud, but this is the rule independent of
the statute.

Therefore we conclude that the transfer by the defendant
bank of all its assets to the defendant company without pro-
vision for payment of its debts was a constructive fraud against
the plaintiffs; that by the very nature of the transaction and
defendant company's relations to the defendant bank it took
the assets with notice and *cum onere,* and in a suit by plaintiffs
in the nature of a creditors' suit to reach the assets or their
value in the hands of defendant company the limitation begins
to run from the date of return of execution upon plaintiffs'
judgments *nulla bona.* Therefore there was no error in the de-
cision of the lower court, and the same is affirmed.

AFFIRMED.

Decided 20 August, 1907.

On Motion for Rehearing.

Opinion by Mr. Justice Eakin.

7. By the motion for a rehearing defendant insists that, as plaintiffs are not seeking to be subrogated to the right of defendant bank, but are proceeding upon a liability in their own favor, they need not reduce their claims to judgments against the defendant bank, but may bring suit against the defendant company directly, and therefore the statute of limitations commenced to run from the time of the taking over the property of the defendant bank. In the opinion we have treated this transfer as a valid one between the defendant bank and defendant company, and only constructively fraudulent as to plaintiffs, because it deprived defendant bank of the means with which to pay its debts, and the remedy of the plaintiffs is not in the right of defendant bank, but in their own right, by reason of the equitable lien existing in favor of the creditors of the corporation bank. This is fully discussed in the opinion.

Counsel cite authorities in the motion to the effect that, where plaintiff's remedy is primary and direct, the creditor need not procure judgment and return of execution before suing the transferee, but may bring suit in the first instance against it. But these are cases in which the primary liability is created by statute, and are therefore not in point. We believe that *Case* v. *Beauregard,* 101 U. S. 688, 691 (25 L. Ed. 1004), states the rule correctly, viz.: "Whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies. * * Indeed, in those cases in which it has been held that obtaining a judgment and issuing an execution is necessary before a court of equity can be asked to set aside fraudulent dispositions of a debtor's property, the reason given is that a general creditor has no lien; and, when such bills have been sustained without a judgment at law, it has been to enable the creditor to obtain a lien, either by judgment or execution. But when the bill asserts

a lien, or a trust, and shows that it can be made available only
by the aid of a chancellor, it obviously makes a case for his in-
terference." But in the case at bar, although the creditor has
an equitable lien, it is not specific, and he has no remedy upon
it if the debtor has property subject to execution, and, as said in
*Case* v. *Beauregard,* 101 U. S. 688, 691 (25 L. Ed. 1004) : "In
some cases, also, such an averment (of judgment and execution
returned) is necessary to show that the creditor has a lien upon
the property he seeks to subject to the payment of his demand."
And that is the case here. This equitable lien is not available
to the creditor until he has disclosed that the debtor is insolvent;
and, further, one of the first requisites in maintaining a cred-
itors' bill is that the creditor has established his claim or debt
by judgment at law : 12 Cyc. 9. This court has frequently held
that the debt cannot be litigated in equity, but before the cred-
itor can maintain such suit he must reduce his claim to judg-
ment at law : *Fleischner* v. *Bank of McMinnville,* 36 Or. 553
(54 Pac. 884, 60 Pac. 603, 61 Pac. 345). This was not a debt
for which the defendant company was primarily liable, nor may
the plaintiffs look primarily to this lien. This right is upon
a liability dependent upon whether the defendant bank is with-
out property available to plaintiffs.

Upon the statement of facts in this complaint, plaintiffs had
no standing without the allegation of judgment and execution
returned *nulla bona* against defendant bank : *D. A. Tompkins
Co.* v. *Catawba Mills* (C. C.), 82 Fed. 780. We understand that
the case of *Taylor* v. *Bowker,* 111 U. S. 110 (4 Sup. Ct. 397 :
28 L. Ed. 368), is directly in point upon this question. In that
case, prior to 1867, the insurance company had wrongfully, as
to creditors, made a division of a portion of its property among
stockholders, and afterward surrendered its charter. Bowker
obtained judgment on April 4, 1868, against the insurance com-
pany upon a suit commenced prior to the surrender of the charter.
Execution was returned *nulla bona* July 8, 1868, and on April 11,
1874, being more than six years after the judgment, but less than
six years from the return of execution, Bowker commenced this

suit to reach property in the hands of the defendants, received by them prior to the surrender of the insurance company's charter; and it was held that judgment and execution were essential to Bowker's remedy against defendants to reach equitable assets, regardless of the statute, which dispensed with a return of the execution. Although the question was not raised in *Bartlett* v. *Drew,* 57 N. Y. 587, cited in the opinion, it is held that, before there is a remedy to follow the equitable lien of a creditor upon the assets of a corporation, the legal remedy must be exhausted. In *Christensen* v. *Quintard,* 36 Hun (N. Y.), 334, the bridge company distributed to its stockholders, including Quintard, a large amount of mortgage bonds without consideration. Plaintiff recovered judgment for his debt against the defendant company, and had execution returned *nulla bona,* and he brought this suit against defendant to recover the value of said bonds received by him. Defendant insisted on the statute of limitations, claiming that, if the debtor was barred, defendant also was barred. The court holds that plaintiff's right does not depend upon the right of the bridge company to recover from the defendant, but upon his own right to enforce the creditor's equitable lien upon the assets of the corporation, and that his remedy does not arise, or the statute begin to run, until judgment and return of execution, citing *Bartlett* v. *Drew,* 57 N. Y. 587; *Scovill* v. *Thayer,* 105 U. S. 143 (26 L. Ed. 968); and *Taylor* v. *Bowker,* 111 U. S. 110 (4 Sup. Ct. 397: 28 L. Ed. 368).

The foundation of the proceeding by a creditor to follow the property of an insolvent corporation in the hands of a third party is not identical with such a proceeding to reach property of an insolvent individual fraudulently conveyed. The authorities clearly maintain a distinction. The quotation in the opinion from 10 Cyc. 1265, which was prepared by Seymour D. Thompson, author of Thompson on Corporations, we think states the law correctly as gathered from the cases. In *Clapp* v. *Peterson,* 104 Ill. 26, 31, the corporation had bought in its own stock, giving in exchange therefor certain city lots, and the creditor, after the judgment obtained and execution returned *nulla bona,*

brought suit against the former stockholder to follow the property so conveyed by the corporation.   The court say:  "We see nothing to show that the transaction in the present case was not in good faith, that there was any element of fraud about it, or that there was anything in the apparent condition of the company to interfere with the making of the exchange that was had.   It is only as injuriously affecting the interests of creditors, we think, that the transaction can be questioned, and it is in that view that it must be considered and passed upon.   In *Sanger* v. *Upton,* 91 U. S. 60 (23 L. Ed. 220), it is laid down: 'The capital stock of an incorporated company is a fund set apart for the payment of its debts.   It is a substitute for the personal liability which subsists in private copartnerships.   When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied.   The creditors have a lien upon it in equity.   If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims.' "   Therefore we conclude that although the plaintiffs are not suing in the right of the defendant bank, but in their own right to follow the property of a corporation under this equitable lien, yet they cannot pursue that remedy until the claims have been reduced to judgment and the insolvency of the defendant bank is disclosed; and the statute of limitations will run not from the time of the discovery by the plaintiffs of the transfer of the property, but from the time that they are in a position to institute the suit, viz., from the date of the return of the execution *nulla bona.*

Motion for rehearing is . denied.

AFFIRMED :  REHEARING DENIED.