[Civil No. 2283.   Filed May 22, 1925.]

[236 Pac. 460.]

## ARIZONA CORPORATION COMMISSION and BANK OF BOWIE, Appellants, v. CALIFORNIA INSURANCE COMPANY, a Corporation, Appellee.

1. INSURANCE—GENERAL CREDITOR OF INSURANCE COMPANY HELD NOT ENTITLED TO PRIORITY OVER MORTGAGEE OF ASSETS.—In absence of actual fraud, general creditor of fire insurance company, which borrowed money and gave notes secured by mortgage on its assets in good faith to enable it to meet its obligations and continue in business, is not entitled to application of assets to satisfaction of his claim before that of mortgagee, on theory that they are trust fund for benefit of company's creditors.

2. INSURANCE—CORPORATION COMMISSION HELD NOT ENTITLED TO OBJECT THAT NOTE AND MORTGAGE OF ASSETS WERE GIVEN WHILE INSOLVENT COMPANY'S INDEBTEDNESS EXCEEDED LEGAL LIMIT.—Corporation Commission, which, like ordinary receiver of insolvent estate, simply steps into shoes of insolvent insurance corporation, on taking possession of its property, under Civil Code of 1913, paragraph 3385, has no better right or title thereto than corporation had, and cannot object to validity of notes and mortgage of assets as *ultra vires*, because company's indebtedness was already greater than permitted by its charter and paragraph 2100, especially where members of commission were fully advised as to all details of transaction and consented thereto.

3. INSURANCE — CANNOT ESCAPE PAYMENT OF NOTES SECURED BY MORTGAGE, AFTER RECEIVING CONSIDERATION FOR WHICH GIVEN, ON GROUND THAT INDEBTEDNESS EXCEEDED AMOUNT PERMITTED BY CHARTER AND STATUTE.—Contract, whereby fire insurance company gave notes secured by mortgage of its assets for loan of money

---

1.   See 7 R. C. L. 755.
2.   See 23 R. C. L. 70.

to enable it to meet its obligations and continue in business, not being immoral, against public policy, unjust, or outside objects for which company was created, though not kind of contract predominately contemplated by Civil Code of 1913, paragraph 2097, subdivision 6, as within power of corporations to make, it cannot escape payment on ground that its indebtedness, at time of transaction, exceeded that permitted by its charter and paragraph 2100, after receiving benefit of contract.

See (1) 32 C. J., p. 1051 (1926 Anno.).   (2) 32 C. J., p. 1048 (1926 Anno.).   (3) 32 C. J., p. 1014.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Mr. Louis B. Whitney, for Appellant Arizona Corporation Commission.

Messrs. Armstrong, Lewis & Kramer, for Appellant Bank of Bowie.

Mr. Charles B. Ward, for Appellee.

ROSS, J.—This is an action by the California Insurance Company against the Arizona Fire Insurance Company to collect an indebtedness in the sum of about $204,000, evidenced by promissory notes, and to foreclose mortgages given as security on certain real estate situated in Phoenix, Arizona. The suit was filed February 13, 1923. In addition to the debtor, the Bank of Bowie, Herbert J. Mann, Cohn-Nickelsburg & Company, and the Arizona Corporation Commission were made defendants, the first three because they claimed some interest in the mortgaged property, and the last because of an order of liquidation made in the superior court of Maricopa county, on June 7, 1922, under and by virtue of which order it took charge of all the property and effects of the Arizona Fire Insurance Company, including the mortgaged property. The plaintiff had judgment for its debt

against defendant Arizona Fire Insurance Company and a decree of foreclosure of its mortgage on property, with an order of sale.

The complaint contained two causes of action. The first was to recover $75,000 evidenced by two promissory notes and secured by mortgage upon lots 2, 4, and 6 of block 89 of the original town site of Phoenix, Arizona, and the rents, issues, and profits thereof. There is no question before us as to this cause of action, and we do no more than merely state the fact.

The second cause of action is to collect a note of $144,000, secured by mortgage upon the same property. The complaint goes into great detail in stating the transaction out of which these latter instruments grew. We undertake to epitomize as follows: The defendant, Arizona Fire Insurance Company, is a domestic corporation and for a long time prior to 1921 had been engaged in soliciting fire insurance and issuing policies against loss by fire. In May of that year such company had outstanding fire policies the unearned premiums on which amounted to $229,000. At that time, it was hopelessly insolvent and unable to meet its obligations, due to extraordinary fire losses and unwise investments. It sought different insurance companies in an effort to procure them to reinsure its live policies, and presented to plaintiff a written statement of its assets and liabilities showing it to be solvent, and represented that, if its outstanding policies could be reinsured, it had assets to take care of all its other debts and liabilities.

The plaintiff, after investigating its statement and making inquiries, formed the conclusion that defendant Arizona Fire Insurance Company was a going and solvent concern with sufficient assets to meet its obligations, if its fire policies were reinsured, and thereupon made an offer to reinsure such policies for 70 per cent of the unearned premiums; that such premiums were represented to be approximately

$206,000, but later it was disclosed to be $229,000; that the Arizona Corporation Commission sat with the defendant Arizona Fire Insurance Company and considered the plaintiff's offer and recommended its acceptance; that thereupon the plaintiff reinsured the outstanding policies of Arizona Fire Insurance Company and assumed the obligation to pay any fire losses sustained by the policy-holders, and fully performed its contract in that behalf; that in consideration of the plaintiff's reinsuring defendant's outstanding policy-holders the defendant gave to the plaintiff its note for 70 per cent of the unearned premiums, which it represented amounted to $206,000, such note being for the sum of $144,000 and secured the same upon the above-described real property and also a pledge of certain bonds and mortgages, out of which plaintiff realized an amount which, when applied on note, left a balance of $110,044. The appeal is prosecuted only by the Arizona Corporation Commission and the Bank of Bowie. The questions raised by each of these appellants are entirely unrelated and will therefore be separately considered.

The Bank of Bowie appeals from the final judgment and assigns as error the court's ruling sustaining the demurrer to its answer. We will first consider this appeal. The answer consists of an attack upon the transaction out of which the $144,000 note and mortgage arose, on the theory that the assets of the Arizona Fire Insurance Company were a trust fund for the benefit of its creditors, and that since the giving of the note and mortgage to the plaintiff was a transaction out of the ordinary course of the business of insurance and resulted in taking all, or practically all, of the assets of the corporation, it should be treated in the same manner as if the defendant had sold such assets. There are general allegations of actual fraud charged against the plaintiff and the defendant Insurance Company, but we do not

understand that the appellant particularly relies upon actual fraud.  In its brief it says:

"We instantly admit that if the Malcolm Case or trust-fund theory is not the law in Arizona no fraud is alleged."

The question then, in short, is, May the assets of a fire insurance company in failing circumstances be legally hypothecated or mortgaged when the transaction is in good faith and done for the purpose of enabling it to meet its obligations and to continue to carry on the business for which it was organized? or, May a general creditor, under the claim that the assets of such corporation are a trust fund, have such assets, or so much thereof as may be necessary, to the exclusion of the mortgagee, applied to the satisfaction of his claim?  The appellant contends that the rule laid down in *Valley Bank* v. *Malcolm,* 23 Ariz. 395, 204 Pac. 207, to the effect "that the assets of a private corporation constitute a trust fund for the benefit of its creditors," has application to the facts of this case.

In the Malcolm case there was an out and out sale by the insolvent bank of all of its assets, made for the purpose of cleaning up the affairs of the selling corporation so that it might cease to be, and the question was as to whether the purchasing corporation under such circumstances could be held liable for one of its general debts.  Here the transaction did not contemplate the dissolution of the Arizona Fire Insurance Company, or that it should go out of existence, or cease to do business.  On the contrary, the help obtained from the plaintiff was for the purpose of preventing its dissolution and ruin, to preserve its credit, and enable it to carry out its obligatons, and also to perpetuate its existence.  The mortgage now objected to was not given for a past debt and was not made for the purpose of preferring one creditor to another.

. . .

It was made to secure, indemnify, and pay the plaintiff for a credit of which it was very much in need, and which inured to and was for the benefit of the policy-holders of the Arizona Fire Insurance Company. We know of no reason why a private corporation, in the absence of any actual fraud, may not borrow money and give its notes secured by mortgage upon its assets, when done in the course of its business and in aid thereof, the same as an individual engaged in business. Of course when a mortgage is given it is always contemplated that it will be fore-closed, if not paid off and satisfied before that event becomes necessary, and the ultimate outcome may result in depriving the corporation of all or most of its assets.

In the Malcolm case we did hold the law would not tolerate the absorption of all the assets of a corporation freed from the claims of creditors, when there was no difference in the selling and purchasing corporation except in name, or where the consideration was inadequate, or where the sale was not made in good faith but for the purpose of defeating creditors, and that, when any of these conditions was present, the assets transferred remained in the hands of the transferee impressed with a trust in favor of creditors to the extent of their provable claims against the selling corporation. In that case the purchasing corporation purchased all the assets of the selling corporation, with full knowledge of its inability to meet its obligations, and we held it liable to creditors of the selling corporation to the extent of any excess of value over that paid. We also said:

"The purchase by one bank of the assets of another, in consideration of the assumption of debts by the purchasing corporation, equal or substantially equal, to the value of the assets taken, does not in itself subject the purchasing corporation to liability

for other debts of the selling corporation. *Drovers' & M. Bank* v. *First Nat. Bank,* 260 Fed. 9, 171 C. C. A. 45; *Ezzard* v. *State Nat. Bank,* 57 Okl. 371, 157 Pac. 127; *Farris* v. *Hodges,* 59 Okl. 87, 158 Pac. 909. Such transfer, which does not divest the former corporation of all its assets or leave it in a condition in which it is unable to respond to the demands of the creditors, differs in no way from the ordinary purchase, and subjects the purchaser to no greater liability. But when, added to this, the selling corporation is left entirely without assets or means of payment of its debts to creditors whose debts have not been assumed by the purchaser, and the purchase is made with knowledge on the part of the purchaser that such is the situation, if any such debts exist, the rule stated in *Williams* v. *Commercial National Bank* [49 Or. 492, 90 Pac. 1012, 91 Pac. 443, 11 L. R. A. (N. S.) 857], *supra,* would seem .to be the more reasonable one and best supported by the authorities.''

Much must necessarily depend upon the circumstances of the particular case, and the facts here differentiate this case from the Malcolm case in that the mortgagee's mortgage did not cover all the assets of the mortgagor, and the mortgage was not given for the purpose of putting the Arizona Fire Insurance Company out of business, but for the purpose of enabling it to continue in business, which it did for some time afterwards. The fairness of the transaction is apparent since the selling corporation retained all of the unearned premiums as an asset with which to meet obligations like that of the Bank of Bowie, giving its note and mortgage for only 70 per cent thereof, and was at the same time relieved of the obligation to discharge its outstanding contracts of insurance. The title of the property was still in the Arizona Fire Insurance Company, the plaintiff having taken only a lien thereon. Its right of redemption still exists; and the Bank of Bowie, having filed and docketed its judgment with the clerk of the su-

perior court of Maricopa county, may, as a junior lienholder, also redeem.

The pleadings also show that the Arizona Corporation Commission, under the law given a supervisory power over fire insurance companies, after full knowledge, advised the consummation of the deal out of which the note and mortgage now attacked originated. Whatever else the effect of such participation by the state's agent, particularly invested with visitorial and supervisory powers over insurance companies, it could hardly have failed to lead the plaintiff to believe the representations of solvency of the Arizona Fire Insurance Company and its ultimate ability to care for all its obligations. We are of the opinion that under the facts of this case the trust-fund doctrine should not be applied, and that the court properly sustained the demurrer to appellant's answer. So far as our investigation goes, the facts do not bring it within the principle of any case where that doctrine has been held to apply. The limitations of the trust-fund doctrine, we think, are very well stated in *Fogg* v. *Blair,* 133 U. S. 534, 33 L. Ed. 721, 10 Sup. Ct. Rep. 338 (see, also, Rose's U. S. Notes), as follows:

"We do not question the general doctrine invoked by the appellant, that the property of a railroad company is a trust fund for the payment of its debts, but do not perceive any place for its application here. That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence."

The Arizona Corporation Commission makes the point that, at the time the Arizona Fire Insurance

Company gave its note and mortgage to plaintiff for $144,000, it was already in debt in an amount greater than permitted by its charter and the laws of the state. The Arizona Fire Insurance Company was capitalized for $300,000 and its charter and the statutes of the state limit the amount of indebtedness and liability, direct or contingent, of a corporation to two-thirds of its capital stock. Paragraph 2100, C. C. 1913. The court in its findings found that such indebtedness consisted of the $75,000 represented by the note and mortgage described in the first cause of action, some $50,000 fire losses adjusted and unadjusted, current bills, and $229,000 unearned premiums due to policy-holders on live fire liabilities. It is therefore contended that the giving of the last note and mortgage was *ultra vires* the powers of the defendant corporation. ·

Under paragraph 3385 of the Civil Code of 1913, it is provided generally that, if any insurance company becomes insolvent, or refuses to permit a reasonable inspection of its records by the Corporation Commission, or neglects to observe any order of the Corporation Commission, etc., such commission may, through the Attorney General, apply to a superior court or any judge thereof in the county in which the principal office of the company is located, or in Maricopa county, for an order directing such company. to show cause why the Corporation Commission should not take possession of its property; and it is further provided that upon a full hearing the court may order the liquidation of the business of the company under the direction of the Corporation Commission, into whose possession the custody and care of its property is placed. It was by virtue of these provisions that the Arizona Corporation Commission came into possession of the property and effects of the Arizona Fire Insurance Company, and by virtue of an order made in the superior court of Maricopa county on the

seventh day of June, 1922. The Corporation Commission, according to the findings of fact, in pursuance of such court order, entered into possession of the mortgaged property and has been in charge thereof ever since and has collected the rents, issues, and profits thereof. This accounts for its being a party defendant in this action.

We take it that the Corporation Commission, like an ordinary receiver of an insolvent estate, simply steps into the shoes of the insolvent. It has no better or different right or title to the property of the insolvent than the latter had. *Hammons* v. *Grant,* 26 Ariz. 344, 225 Pac. 485; 23 R. C. L. 70, § 75. The Arizona Corporation Commission, occupying the shoes of the Arizona Fire Insurance Company, would have no greater right to interpose objection to the validity of the note and mortgage in question than would the maker thereof. In addition, the members of the Corporation Commission collaborated with the directors of the Arizona Fire Insurance Company and were fully advised as to all the details of the transaction and gave their consent thereto. It should also be borne in mind that out of the indebtedness of the Arizona Fire Insurance Company $229,000 was for unearned premiums. It may be doubted whether the statutory limitation upon the amount of indebtedness direct or contingent, that a corporation may lawfully contract has application to a fire insurance company, or that feature of its indebtedness that grows out of the issuance of fire policies—the primary source of all of its earnings and the very life of its business. It should also be remembered that in the act of giving the note and mortgage in question it discharged the contingent indebtedness of $229,000 and reduced it to the $144,000. In other words, it discharged such indebtedness at a great discount.

But, aside from these observations, we will treat the question as settled that, at the time the $144,000

note and mortgage were executed, the Arizona Fire Insurance Company owed an indebtedness, direct and contingent, in excess of two-thirds of its capital stock. And we will also assume that the Arizona Corporation Commission is in a position to raise the question of *ultra vires*. The contract was not against morality nor against sound public policy nor violative of any rule of justice. It was void, if at all, only because it exceeded the limit provided by the statute. The plaintiff had fully performed and paid the consideration agreed upon for the note and mortgage, and the defendant had received the benefits thereof and, having received the fruits of the contract, it would be extremely unjust to permit it to escape payment. Recently this court has spoken on the very question involved, saying, in *Orme* v. *Salt River Valley Water Users Assn.*, 25 Ariz. 324, 343, 217 Pac. 935, at page 942:

"On the question of the limitation of corporate indebtedness, Arizona's statute is very similar to Iowa's, and it is held in that state that an indebtedness incurred in violation of these provisions is voidable merely, and therefore enforceable against the corporation or those holding under it, and that no one except the state can question it."

The statute grants to a corporation organized under the law of Arizona the power —

"(6) To make contracts, acquire and transfer property, possessing the same powers in such respects as private individuals now enjoy." Paragraph 2097, Civil Code 1913.

Thus the power to make contracts, like the one in question, is expressly given to private corporations, and while not of the kind predominately contemplated was certainly not outside the objects for which the Arizona Fire Insurance Company was created. Upon a very similar question, in *Sioux City T. R. & W. Co.* v.

*Trust Co.,* 82 Fed. 124, 27 C. C. A. 73, the court had this to say:

"The bonds and mortgage had in them no element of fraud, deceit, or misrepresentation. They were not evil in themselves. The corporation does not offer to return the moneys which it received upon this mortgage, but seeks to retain all its benefits and to repudiate all its burdens. It will be soon enough for the chancellor to stay his hands from the enforcement of these contracts, and soon enough for him to set them aside, when the corporation returns to the complainant the moneys it received upon them. Until then, good faith, justice, and equity demand their enforcement. ( A man cannot plead his cwn wrong to relieve himself from the obligations of an executed contract whose benefits he retains; nor is it any defense for a private corporation, against the enforcement of an executed contract whose benefits it holds, that, while its execution was within the general scope of its powers, it involved an excessive exercise of one of them. While it retains the benefits of such a contract, it silently affirms and may not be permitted to deny, its validity." )

We can find no fault in the judgment of the lower court, and it is therefore affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.